371 So.2d 1056 (1979)
Wilbur M. SNIDER, Appellant,
v.
Evelyn SNIDER, Appellee.
Nos. 78-1566, 78-2112.
District Court of Appeal of Florida, Third District.
May 29, 1979.
Rehearing Denied July 5, 1979.
*1057 Heller & Kaplan, Miami, for appellant.
Frates, Floyd, Pearson, Stewart, Richman & Greer and Robert L. Floyd, Miami, for appellee.
Before BARKDULL and KEHOE, JJ., and CHARLES CARROLL (Ret.), Associate Judge.
KEHOE, Judge.
Appellant, respondent below, brings these consolidated appeals from a final judgment of dissolution of marriage. We affirm in part and reverse in part.
By this appeal, appellant primarily challenges the trial court's denial of his counterclaim for a special equity in two notes and mortgages having an approximate value of $2,000,000 at the time of trial. The relevant portion of appellee's petition for dissolution of marriage in regard to these assets reads as follows:
"8... . The parties further jointly own certain property consisting of mortgages, the payments on principal and interest of which have been retained by the Respondent solely, and the Respondent has failed and refused to account to the Petitioner for the monies derived therefrom... ."
The relevant portion of appellant's answer and counterclaim reads as follows:
"7. With regard to said notes and mortgages ... described in the complaint, all the consideration was furnished by the respondent, and he is thereby entitled to the entire interest therein as a special equity."
In her reply to the counterclaim, appellee denied the allegations of this paragraph.
After a non-jury trial and upon the evidence presented, the trial court made the following findings of fact and conclusions of law:
"The parties were married to each other on December 31, 1957, and there are no children born of this marriage. At the time of the marriage, the Wife was a successful business woman. The Husband *1058 was not employed, but realized income from a family trust.
"During the approximate twenty (20) years of the marriage, the Wife owned and operated a very successful ladies apparel shop, which became bankrupt in 1977. Until that time, she contributed her earnings toward the family expenses, which enabled the Husband to pursue a career in real estate investments. The Wife encouraged these endeavors. She introduced her husband to several persons, including his partner, Fritch, which led to the real estate investments, which were all very successful ventures of the Husband. These ventures included the construction of the Beekman Towers and Mayfair Towers on Miami Beach.
"When certain of these properties were sold, the Husband caused the promissory notes and purchase money mortgages to be held in joint names with his Wife, to-wit: the purchase money notes and mortgages on the Manhattan Towers and the Beekman Towers. The Husband now claims this was done solely for survivorship purposes, and, as further support of this position, emphasizes that no gift tax return had been filed. The Court does not believe that the sole purpose of the conveyance in the notes and mortgages in the joint names was for survivorship purposes only; nor does the Court believe that the Husband's net worth which was listed at various times at an excess of Five Million Dollars was only a little over One Million Dollars prior to the trial.
"It is the finding of the Court that the Wife contributed to the creation of these notes and mortgages, and that the Husband intended to award her efforts by a gift.
"During the marriage, the parties enjoyed a fine very high standard of living. They occupied a large luxurious apartment under a long-term lease, they owned expensive furniture and furnishings, owned yachts and Rolls Royce automobiles.
"At the present time, the Wife is 64 years of age, without substantial assets, has had to borrow monies ($30,000 from the City National Bank, and $25,475.00 in personal loans) for her support. The Husband has substantial assets, and is well able to maintain her in the standard which they enjoyed during the marriage.
"IT IS THEREFORE, ORDERED AND ADJUDGED AS FOLLOWS:
"1. The bonds of marriage between Petitioner, EVELYN SNIDER, and Respondent, WILBUR M. SNIDER, are dissolved because the marriage is irretrievably broken.
"2. The Husband's claim for a special equity in and to the promissory note and mortgage (dated December 1, 1969) made by Joseph Sorota, as Trustee, to Wilbur M. Snider and Evelyn Snider, and to the promissory note and mortgage (dated April 30, 1970) made by Julius Perlbinder, as Trustee, to Wilbur M. Snider and Evelyn Snider, is denied.
"3. The Petitioner is entitled to a one-half interest in each of the two purchase money notes and mortgages referred to in Paragraph 2 hereof, and the Respondent/Husband is hereby ordered and directed to execute any and all documents necessary to accomplish the record ownership of the interest of the wife.
"4. The Husband is ordered to account to the Wife for all payments received by him since their separation on the promissory notes and mortgages referred to in Paragraph 2 hereof, and pay unto the Wife one-half (1/2) of said monies.
"5. The Wife, EVELYN SNIDER, is hereby awarded possession of the marital residence.
"6. The Wife is granted as partial lump-sum alimony, all of the furniture and furnishings contained in said apartment.
"7. The Husband is ordered to pay unto the Wife, as periodic alimony, the rent payable on the lease for the marital residence, and the additional sum of One Thousand Five Hundred Dollars ($1,500.00) per month.
"8. This Court reserves jurisdiction to determine the award of attorneys' fees *1059 and costs, and to enforce the terms of this Final Judgment."
As shown by the relevant portions of the pleadings set forth above, appellant attempted to establish that he had a special equity in the notes and mortgages held as tenants by the entireties which should have given him the entire interest in these assets. The Supreme Court of Florida in Ball v. Ball, 335 So.2d 5 (Fla. 1976), stated, inter alia, as follows:
"... in the marriage dissolution proceedings as to why one should be awarded more than an equal proportion of real property held as tenants by the entireties, record title speaks for itself."
* * * * * *
"The premise that record title bespeaks an equal division is, of course, only the starting point for a property division. Either spouse has the right to attempt to establish a `special equity' in the realty by reason of his or her extraordinary contribution toward its acquisition, either financially or through personal industry and service to the other party. [Footnote omitted.] The other party, of course, can negate the attempted showing or affirmatively attempt to show a gift was intended. [Footnote omitted.] We are not now called upon to determine the range of circumstances which might create a special equity. Consistent with prior decisional law, however, we hold that a special equity is created by an unrebutted showing, ... that all of the consideration for property held as tenants by the entireties was supplied by one spouse from a source clearly unconnected with the marital relationship. [Footnote omitted.] In these cases the property should be awarded to that spouse, as if the tenancy were created solely for survivorship purposes during coverture, in the absence of contradictory evidence that a gift was intended." Id. at 7.
Applying these principles to the instant case, we start out with the basic premise that record title speaks for itself. Here, the subject property[1] was held by the parties as tenants by the entireties which form of ownership was converted by law, at the time of the dissolution of the marriage, to a tenancy in common. Pursuant to Ball, if we could stop at this point, the property should be equally divided between the parties. However, here, appellant by way of his counterclaim attempted to establish a special equity in the entire subject property. If appellant had made an unrebutted showing that all of the consideration for the subject property had been supplied by him from a source clearly unconnected with the marital relationship, at this point, he could have established a special equity. However, the trial court specifically found, among other things, that not only did appellee contribute to the creation of the notes and mortgages, but that appellant intended to make a gift to appellee of a one-half interest in the property. The trial court further found that the tenancy by the entireties was not created, as contended by appellant, for survivorship purposes. These findings both negated appellant's attempted showing of a special equity and established instead that a gift had been made. Pursuant to these findings, and others, the trial court found that appellant was not entitled to a special equity. Without more, at this point, we would agree with the trial court's findings; however, upon review, it is our duty to ascertain from reviewing the record whether these findings were supported by competent substantial evidence. After careful scrutiny of the record in this cause, but for the principles set forth in, e.g., Herzog v. Herzog, 346 So.2d 56 (Fla. 1977), and Shaw v. Shaw, 334 So.2d 13 (Fla. 1976), i.e., prohibiting us from substituting our judgment for that of the trial court, we might have reached a different conclusion based upon the evidence adduced. However, we believe that the trial court's findings were predicated upon at least that minimal amount of evidence sufficient to evoke the principles set forth, e.g., in Herzog and Shaw. Accordingly, we *1060 are constrained to affirm that portion of the trial court's final judgment of dissolution of marriage finding appellant had no special equity in the subject property.
In regard to appellant's collateral point on appeal, i.e., the trial court abused its discretion by awarding alimony to appellee in the amount of $1500 per month permanent alimony, we must respectfully disagree with the trial court. In our opinion, based upon the facts in this case, the trial court erred in awarding such alimony to appellee because the record fails to show any basis for the award. See Kennedy v. Kennedy, 303 So.2d 629 (Fla. 1974); and § 61.08, Fla. Stat. (1977).
For the reasons set forth above, the final judgment of dissolution of marriage appealed is affirmed except that portion of the judgment which awards appellee permanent alimony in the amount of $1500 per month is reversed.
Affirmed in part, reversed in part.
NOTES
[1] Although Ball addressed itself only to real property, we do not believe that the type of property, i.e., real or personal, involved should change the legal principles set forth therein.