ROBERT P. SMITH, Jr., Judge,
dissenting:
I think we should defer to the circuit court’s finding that the husband did not, by providing most of the down payment for the parties’ home property, held by the en-tireties, acquire a “special equity” encumbering the wife’s undivided interest. Correspondingly, I see no reason to counterc-harge the husband’s undivided interest with the number of dollars contributed to the purchase by the wife. Refusing to indulge in this problematic tracing of contributions, the chancellor rightly stated:
In this case, the parties jointly selected the property; they purchased it in their joint names; and although the husband contributed more cash because he was able to contribute more cash, the contributions of the wife were very substantial. The husband’s testimony that he had no intent of the wife being an equal owner with him is simply unbelievable.
There are a great many problems in marriage dissolutions. Frequently there are children and much trouble with alimony and child support. Frequently there are harassments following dissolu-tions. However, dissolutions have not yet degenerated into an accounting where the Court must evaluate each item of labor, love and material contributions and balance one off against the other so that each party has an accounting down to the last scintilla of what he or she contributed to the marriage.
The Court disregards the chancellor’s finding, that the testimony negating a gift was “simply unbelievable,” which I think is inappropriate in itself.[1] Moreover, the Court in my opinion has carried the “special equity” inquiry far beyond its doctrinal limits. Granted that the Supreme Court in *1119 Ball[2] did not fully “determine the range of circumstances which might create a special equity,” thus leaving open the question of whether a special equity might arise when less than “all of the consideration for property held as tenants by the entireties was supplied by one spouse from a source clearly unconnected with the marital relationship,” surely the “special equity” doctrine does not require an appellate court to penetrate both the deed to the home property, which “speaks for itself” in declaring the husband and wife equal owners, and the joint bank account into which both spouses deposited and from which the down payment was drawn. Buying a home and taking it in both names is quite an ordinary event in the lives of newly-marrieds; and there is nothing unusual in the circumstance that one of the spouses, from independent resources, contributed more to the joint bank account, thence to the down payment, than the other. In my opinion, neither the husband’s nor the wife’s contribution to the common down payment fund was an “extraordinary contribution” justifying a judicial piercing of the tenancy by the entire-ties. Ball, 335 So.2d at 7. I would affirm.

. Herzog v. Herzog, 346 So.2d 56 (Fla.1977); Shaw v. Shaw, 334 So.2d 13 (Fla.1976); Snider v. Snider, 371 So.2d 1056 (Fla. 3d DCA 1979); Merrill v. Merrill, 357 So.2d 792, 793 (Fla. 1st DCA 1978):
The question of donative intent is one of a preponderance of the credible evidence; and that question is for the chancellor, not for us.

. Ball v. Ball, 335 So.2d 5, 7 (Fla.1976).