389 So.2d 256 (1980)
Elizabeth Anne LEONARD, Appellant,
v.
William LEONARD, Appellee.
No. 79-1756.
District Court of Appeal of Florida, Third District.
September 30, 1980.
Rehearing Denied November 7, 1980.
Joe N. Unger, Miami, Harvey Richman, Miami Beach, for appellant.
Lapidus & Stettin and Richard L. Lapidus, Miami, for appellee.
Before BARKDULL, HUBBART and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
The narrow issue on this appeal is whether, upon dissolution of the marriage between the parties, Mrs. Leonard was entitled to be awarded a one-half interest in a houseboat[1] titled in their joint names, or, as the trial court concluded, the mere sum of *257 $8,600 (plus interest) which she contributed to the construction of the houseboat and which the trial court found to be her "special equity."
The trial court arrived at its conclusion by finding (a) that the husband contributed all but $8,600 to the acquisition and construction of the houseboat; and (b) that when the houseboat was titled in the joint names of the parties, it was done at the instance of a lender bank, and no gift of a one-half interest to the wife was intended by the husband. Both of these findings are amply supported by the evidence. Neither finding, however, supports the trial court's decision to award the houseboat to the husband. The reason is that the trial court, disregarding the teachings of Ball v. Ball, 335 So.2d 5 (Fla. 1976), and its progeny, began with the wrong inquiry leading it inexorably to the wrong conclusion.
The teaching of Ball v. Ball, supra is that record title is the starting point for the division of property.[2] In the present case the record title to the houseboat showed it to be in the joint names of the husband and wife. In order for the husband to be entitled to more than his record title one-half interest, it is incumbent on him to establish a special equity. This special equity could be established by a showing that "the consideration for property held as tenants by the entireties was supplied by one spouse from a source clearly unconnected with the marital relationship,"[3]Ball v. Ball, supra, at 7 (emphasis supplied); Mitchell v. Mitchell, 368 So.2d 628 (Fla. 4th DCA 1979); Forehand v. Forehand, 363 So.2d 829 (Fla. 1st DCA 1978); Merrill v. Merrill, 357 So.2d 792 (Fla. 1st DCA 1978). But a showing that property held as tenants by the entireties was acquired from a source connected with the marriage, that is, the husband's earnings during coverture, does not establish this special equity. Ball v. Ball, supra, at 7, fn. 7; Holbrook v. Holbrook, 383 So.2d 981 (Fla. 4th DCA 1980)[4]; Smith v. Smith, 378 So.2d 11 (Fla. 3d DCA 1980)[5]; Fiedler v. Fiedler, 375 So.2d 1119 (Fla. 2d DCA 1979)[6].
In the present case no showing was made that the consideration paid by the husband for the houseboat in question was from a source clearly unconnected with the marriage.[7] The absence of that required *258 showing means that the husband did not establish a right to any portion of the wife's record title one-half interest in the houseboat.[8]
This is where the appropriate inquiry would have ended. The inquiry into whether a gift was intended (the trial court's starting point) is, under Ball, only made after one party first establishes his or her right to a special equity in the entireties property. It is only at that point that the other party can attempt to show that despite the fact that his or her spouse contributed a disproportionate share of non-marital funds to the acquisition, the contributing spouse intended to make a gift when title was placed in both names. In sum, Mrs. Leonard, by virtue of the record title, is entitled to one-half of the property; if Mr. Leonard had established a special equity, which he did not, only then would he have have been entitled to a portion of the wife's one-half interest to the extent of his special equity.[9] Only had that occurred would Mrs. Leonard, in order to retrieve her one-half share, have had to establish that her husband intended to make a gift to her when the property was placed in their joint names. That burden never became hers to satisfy.
Accordingly, we reverse that portion of the Final Judgment of Dissolution which orders (a) William Leonard to pay to Elizabeth Anne Leonard the sum of $8,600 plus interest, that is, $10,664; (b) William Leonard to cause the Jefferson National Bank to release Mrs. Leonard from liability on the note secured by the houseboat; and (c) Elizabeth Anne Leonard to transfer her interest in the houseboat to William Leonard. We remand the cause to the trial court with directions to revise the final judgment so as to declare Elizabeth Anne Leonard an owner of a one-half interest in the houseboat.
Reversed.
BARKDULL, Judge, dissenting.
I must dissent from the majority herein. The final judgment of dissolution entered by the trial judge reads, in part, as follows:
.....
Petitioner and Respondent were married in Miami, Dade County, Florida, on October 18, 1973 and separated on September 1st, 1978. There are no children born of the marriage. The marriage is irretrievably broken. During the course of the marriage, Petitioner/Wife has been employed and is presently self-supporting. She makes no claim for alimony or other support. She presently earns $18,500.00 per year. In 1978, she earned $32,300.00 per year. She has $10,000.00 in a savings account and a money market certificate in the amount of $15,000.00. The Financial Affidavit she has filed with this Court reflects assets of $45,000.00 and no debts. Mrs. Leonard testified that she contributed $8,600.00 towards the building of a houseboat titled in the name of both parties jointly. The balance of the funds for the houseboat came from WILLIAM LEONARD. Although both parties signed a mortgage and note with the Jefferson National Bank, the bank has indicated that they will release Mrs. Leonard from her liability on the mortgage and note. There is no question from the testimony that the bulk of the monies for construction of the houseboat came from WILLIAM LEONARD. Although Mr. Leonard contributed the bulk of the monies for the houseboat and originally had the boat titled in his name, Jefferson National Bank, the lender, requested that the title be transferred to the joint names of Husband and Wife to avoid any potential problem with the lien they were acquiring on the boat. This testimony is unrefuted. Mr. Leonard *259 clearly did not intend to make a gift to Mrs. Leonard of a one-half interest in the houseboat. This Court finds, however, that she did contribute $8,600.00 towards the houseboat. On the authority of Ball v. Ball, 335 So.2d 5 (Fla.S.Ct. 1976) and Mitchell v. Mitchell, 368 So.2d 628 (Fla. 4th DCA 1979), ELIZABETH ANNE LEONARD has a special equity in the houseboat to the extent of $8,600.00 plus accrued interest on the monies she advanced of $2,064.00 for a total of $10,664.00.
.....
ORDERED and ADJUDGED as follows:
1. That the bonds of marriage between Petitioner, ELIZABETH ANNE LEONARD, and Respondent, WILLIAM LEONARD, are dissolved because the marriage is irretrievably broken.
2. WILLIAM LEONARD is ordered to pay within thirty (30) days of this Order to ELIZABETH ANNE LEONARD the sum of $10,664.00, and to cause the Jefferson National Bank to release ELIZABETH ANNE LEONARD from her liability on the note secured by the houseboat. ELIZABETH ANNE LEONARD is ordered to transfer to WILLIAM LEONARD her interest upon said payments in the houseboat titled under Florida Title No. 510502.
.....
On this appeal, the wife contends that the trial court erred in not awarding her one-half interest in the houseboat. I disagree and would affirm. See: Forehand v. Forehand, 363 So.2d 829 (Fla. 1st DCA 1978); Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980). It is clear from the finding of the trial judge that title to the houseboat would have remained solely in the husband but for the requirement of the bank that the title be placed in both names at the time of a loan to the husband. The bank has agreed to release the wife from the obligation on the loan and the trial judge has adequately returned to her the funds advanced by her toward the improvement of the houseboat, and I think the matter is controlled by Forehand, supra.
Therefore, I would affirm the final judgment here under review.
NOTES
[1] The value of the houseboat, according to Mrs. Leonard, was $150,000 to $175,000 and, according to Mr. Leonard, was $85,000 to $95,000.
[2] The houseboat is personalty. Concededly, Ball dealt with real property held as tenants by the entireties, but subsequent decisions have applied the principle announced in Ball to personalty. See Smith v. Smith, 378 So.2d 11 (Fla. 3d DCA 1980); Snider v. Snider, 371 So.2d 1056 (Fla. 3d DCA 1979); Mitchell v. Mitchell, 368 So.2d 628 (Fla. 4th DCA 1979).
[3] Mrs. Leonard argues that it is her husband's burden to show that "all" of the consideration came from him. She relies on Ball's use of that word. In Ball, the reference to "all" was a reference to the facts of that case. Obviously, a party can establish a special equity by showing a less-than-all contribution. If not, then the use of any funds connected with the marital relationship to acquire property, no matter how insignificant, would defeat a special equity.
[4] In Holbrook, the court rejected the wife's claim to a special equity in property jointly owned with her husband where her claim was based simply on the fact that her earnings during the marriage were greater than the husband's.
[5] In Smith, supra, at 18, we reversed the trial court's determination that the wife had no interest in jointly titled shares of stock acquired from funds earned by the husband during the marriage.
[6] In Fiedler, the court specifically read Ball to mean that earnings of one spouse during the marriage are not unconnected with the marital relationship simply because they are devoted to the purchase of a piece of property while the other spouse's earnings are used in day-to-day living.
[7] The husband made no effort to show that the funds used to purchase the houseboat were moneys he brought with him to the marriage. Indeed, he testified that in large part the moneys used for the purchase came from cashing his salary checks, that he had no personal checking account apart from the joint account he maintained with Mrs. Leonard from which other payments towards the boat were made, and that Mrs. Leonard's earnings went into this joint account. Significantly, his own counsel elicited from him that the money for the houseboat came substantially from his "earnings at the time." Finally, the husband does not argue on this appeal that he has in any way demonstrated that the moneys used by him were from a source clearly unconnected with the marriage.
[8] The husband made no claim in the trial court that he was entitled to the wife's interest in the houseboat as an award of lump sum alimony, nor would such a claim have been here justified. Thus, there is no basis for affirming the trial court for arriving at the correct result for the wrong reason. See Duncan v. Duncan, 379 So.2d 949 (Fla. 1980).
[9] This presumably would have been all of her one-half interest less the $8,600 found to have been contributed by her.