390 So.2d 752 (1980)
Beverly Ann KAYLOR, Appellant,
v.
Ronald Dean KAYLOR, Appellee.
No. 78-2167.
District Court of Appeal of Florida, Fourth District.
October 29, 1980.
Rehearing Denied December 24, 1980.
*753 Larry Klein, West Palm Beach, and Ronald Sales, Palm Beach, for appellant.
Cynthia S. Prettyman of Montgomery, Lytal, Reiter, Denney & Searcy, West Palm Beach, for appellee.
GLICKSTEIN, Judge.
This is an appeal from a final judgment of dissolution which included, in pertinent part, the following findings of fact:
2. The parties were married on March 27, 1960 and have resided together since that time. Today Mrs. Kaylor is thirty-eight (38) years of age and Mr. Kaylor is thirty-nine (39) years of age. During the course of the marriage three children were born: Cindy Cherise, age 17, Christopher Wayne, age 9, and Julie Karen, age 8.
3. Though Mrs. Kaylor did work outside the home for short periods of time during the initial stages of the marriage, she has for the most part worked as a full-time homemaker. She is a fit and capable parent. At the present time Mrs. Kaylor suffers from severe emotional depression which requires some psychiatric care and which, for the time being at least, renders her occupationally disabled.
4. Mr. Kaylor is a graduate professional engineer. He is employed by the K & M Electric Supply, Inc., a corporation of which he is a major stockholder. His annual gross salary is $26,200.00; his net pay per week is $388.05. As is the case with Mrs. Kaylor, Mr. Kaylor is a fit and capable parent.
5. As of this date, the parties jointly own the following property: (1) The marital home (which has a mortgage of approximately $31,000.00 and a fair market value of approximately $47,000.00); (2) The furnishings of the marital home; (3) a 1973 Chevrolet station wagon; (4) A lot and home in North Carolina (which has a fair market value of approximately $2,500.00); and forty per cent of the capital stock of K & M Electric Supply, Inc.
6. K & M Electric Supply, Inc., is a wholesale electrical supply company. It was formed in 1972 and today has a net value of approximately $90,000.00. It appears that there are two major "partners" in the company, Mr. Kaylor and another. As indicated above, Mr. and Mrs. Kaylor hold record title to forty per cent of the capital stock of the corporation. This stock was purchased when Mr. Kaylor borrowed a total sum of $10,000.00 from two sources ($5,000.00 from one and $5,000.00 from the other). As of this date, approximately $9,000.00 remains due and owing on the loan. Upon review of the history of this purchase and the financing therefor, the Court finds as a matter of fact that the husband did not intend to confer a gift of the stock upon the wife and that it was placed in joint name solely for survivorship purposes during coverture.
Based on those findings, the trial court awarded the wife custody and child support, lump sum alimony in the form of the husband's interest in the marital home and furnishings, and rehabilitative alimony of $110.00 per week. The husband was awarded a special equity in the capital stock of K & M Electric Supply, Inc., and was held responsible for one-half of the wife's attorneys' fees.
The wife raises three points:
I. That permanent, not rehabilitative, alimony should have been awarded to the wife.
II. That the husband should not have been given a special equity in the corporate stock.
III. That the husband should have been ordered to pay all of the wife's attorneys' fees.
We agree with her as to point III, but disagree as to points I and II.
*754 As for the first point, Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980), requires of an appellate court when reviewing a true discretionary act such as an award of alimony to affirm the trial judge unless the latter's decision is unreasonable. Accord, Burrows v. Burrows, 384 So.2d 1312 (Fla. 4th DCA 1980). Sub judice, in light of the fact that the wife's treating psychiatrist testified that one of the aims of counseling was to enable the wife to cope with the pressures of a job and that such was a realistic possibility in the future,[1] we do not think that the award of rehabilitative alimony for three years with the provision that the trial court would retain jurisdiction "to review the circumstances of each party and at the termination of the three-year period, to determine the necessity for an extension of alimony" was unreasonable.
At that time, the trial court will appropriately take into consideration the state of appellant's health, as well as the other factors bearing on her entitlement to an award of permanent alimony ...
Hebert v. Hebert, 382 So.2d 842, 843 (Fla. 1st DCA 1980). See Barker v. Barker, 384 So.2d 925 (Fla. 1st DCA 1980).
We also agree with the trial court that the husband had a special equity in the capital stock of the corporation which employs him. The funds for acquiring the stock were from loans and not generated through the work of the husband. Had the latter been the case a special equity would not have arisen. Duncan v. Duncan, 379 So.2d 949 (Fla. 1980). While we have disposed of this point on the ground recited above, we further question the wisdom in this case of the wife's continued ownership of capital stock in the husband's business. See Bird v. Bird, 385 So.2d 1090 (Fla. 4th DCA 1980).
Finally, we believe the husband should be responsible for all of the wife's attorneys' fees. What the court said in Canakaris v. Canakaris, supra at 1205, is applicable sub judice:
The husband has a superior financial ability to secure and pay counsel. It is not necessary that one spouse be completely unable to pay attorney's fees in order for the trial court to require the other spouse to pay these fees.
Accord, Lewis v. Lewis, 383 So.2d 1143 (Fla. 4th DCA 1980).
Accordingly, we affirm in part, reverse in part, and remand for further proceedings consistent herewith.
AFFIRMED in part, REVERSED in part, and REMANDED.
ANSTEAD, J., concurs specially with opinion.
LETTS, C.J., dissents in part with opinion.
ANSTEAD, Judge, specially concurring:
It is only because the trial court, in essence, postponed a determination as to appellant's entitlement to permanent alimony that I can concur in an affirmance of the award of rehabilitative rather than permanent alimony. In my view there is simply no competent, substantial evidence in the record to support a conclusion that Mrs. Kaylor will be able to support herself at the end of three years. Certainly, the main thrust of the psychiatrist's testimony alluded to in the majority opinion was that Mrs. Kaylor was presently disabled from employment and would continue to be so disabled into the foreseeable future. That fact, coupled with the other circumstances attendant to the breakup of this long term marriage would usually result in an entitlement to permanent rather than rehabilitative alimony. Wagner v. Wagner, 383 So.2d 987 (Fla 4th DCA 1980); Bashaw v. Bashaw, 382 So.2d 1352 (Fla. 4th DCA 1980); Garrison v. Garrison, 380 So.2d 473 (Fla. 4th DCA 1980); Patin v. Patin, 371 So.2d 682 (Fla. 4th DCA 1979); Kvittem v. Kvittem, 365 So.2d 791 (Fla. 4th DCA 1978); Langstaff v. Langstaff, 363 So.2d 399 (Fla. 4th DCA *755 1978); West v. West, 345 So.2d 756 (Fla. 4th DCA 1977); McAllister v. McAllister, 345 So.2d 352 (Fla. 4th DCA 1977). The burden then would be on the husband to seek a reduction or termination of alimony if the wife indeed subsequently became self-supporting.
However, the Florida Supreme Court, in Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980) and other recent decisions has stressed the need for vesting the trial court with broad discretion in these matters and I am unwilling to say that the trial court who observed the parties first hand, was acting without reason in fashioning the alimony provisions involved. It may well be that the trial court concluded that the only way Mrs. Kaylor could be helped in rehabilitating herself, emotionally as well as otherwise, would be by requiring her to attempt some employment efforts before the issue of permanent alimony would be decided. And since no final decision has really yet been made on the issue of permanent alimony I see no compelling reason to second-guess the trial court's judgment in this regard.
LETTS, Chief Judge, dissenting in part:
I dissent in part.
In my opinion permanent alimony was mandated under the facts of this case. It is all very well for the trial judge to retain jurisdiction for another look-see, but upon his revisiting the problem down the road, this very opinion will put the burden on the wife to justify any continuing alimony even though the facts clearly established her claim to permanent alimony as of the time of the final dissolution.
Canakaris is a significant and praise-worthy opinion which has been most welcomed by Bench and Bar. However, I am convinced it was not intended to be an absolute carte blanche for trial judges to do whatever they wish. The argument for permanent alimony here is overwhelming.
Moreover as a practical matter, this trial judge who as Judge Anstead notes, "observed the parties firsthand," will not be there to do so again when the issue is reheard because that trial judge is now a member of this Court. Instead a brand new judge with no more firsthand insight of the record than we have, will revisit the matter knowing that the burden is then on the wife to prove entitlement to continued support.
Finally, unlike my colleagues, I see no particular magic in the retention of jurisdiction for another look-see. In my experience every final judgment of dissolution retains jurisdiction to revisit the question of support and the only difference here is that the retention is more specific than usual.
At the very least I would certify the question to the Supreme Court. Failure to do so may give rise to the situation where a trial judge can never be reversed for failing to grant permanent alimony.
NOTES
[1] The psychiatrist testified, inter alia: "In time to come, it's very hopeful that she can handle [the goal oriented pressures of a job] ... She should, really, because this is what we're working for."