399 So.2d 433 (1981)
In re the Marriage of Laurel J. Ising MARSH, Appellant,
v.
Arthur Wayne MARSH, Appellee.
No. 80-451.
District Court of Appeal of Florida, Fifth District.
June 3, 1981.
*434 Ed Leinster, Orlando, for appellant.
Robert J. Buonauro, Orlando, for appellee.
DAUKSCH, Chief Judge.
This is an appeal from a final judgment of dissolution of marriage. The appellant raised three points on appeal. We find merit in the first point raised and reverse.
The trial judge denied the wife a special equity in the marital home on the following facts. The marriage involved was of short duration, four months, and no children were born of the marriage. The wife owned the marital home before the parties were married. After having been married two months, the wife had the home put into her name and the husband's name. The wife alleges, and the evidence supports the allegation, that this was done so that her children from a previous marriage would have a home if something happened to her; however, in case of a divorce, the property was to be transferred back to her. The husband claimed it was a gift. The trial court found that the wife gave the home as a gift to the husband and ordered the home partitioned and sold. We find the trial court erred in failing to award the marital domicile to the wife because of her special equity.
Prior to Ball v. Ball, 335 So.2d 5 (Fla. 1976), a conveyance from a husband to a wife was presumed to be a gift as was a conveyance from a wife to a husband. Steinhauer v. Steinhauer, 252 So.2d 825 (Fla. 4th DCA 1971). The effect of the Ball decision was to raise another presumption: the presumption that a special equity is created by an unrebutted showing that all the consideration for property held as tenants by the entirety was supplied by one spouse from a source clearly unconnected with the marital relationship. "Now the burden is on the grantee to establish, by `contradictory' evidence, that a gift was intended. In sum, the grantee must overcome the presumption of the special equity." Wright v. Wright, 388 So.2d 1319, 1321 (Fla. 5th DCA 1980).
The evidence clearly showed that the wife entered the present marriage owning the house in her name, she paid all of the mortgage payments and property taxes. The husband testified that the wife had intended a gift to him. As was held in Merrill v. Merrill, 357 So.2d 792, 793 (Fla. 1st DCA 1978), the Ball decision should not be read "as holding that a word or two of testimony by the recipient spouse, to the effect that the other intended a gift, obliterates the special equity resulting from an unrebutted showing that the grantor spouse acquired the property from sources entirely independent of the marriage." Although donative intent is a question for the trial court, the trial court's ruling is not binding on an appellate court where as here there is no credible evidence of such an intent below. Bickerstaff v. Bickerstaff, 358 So.2d 590 (Fla. 1st DCA 1978). We are bound to determine that the wife has a special equity in the marital domicile as there was no credible evidence to support the trial court's ruling that the wife intended a gift.
Accordingly, that portion of the final judgment of dissolution of marriage ordering the marital home partitioned and sold is reversed.
REVERSED IN PART.
COBB, J., concurs.
COWART, J., dissents with opinion.
COWART, Judge, dissenting:
A person who owns separate property[1] conveys that property during marriage *435 jointly to themselves and their spouse. Later at dissolution of the marriage that person wants the whole property back. Are they entitled to a return of it? In failing to provide a definitive answer to this question, Florida law fails to provide a rule of law leading to a reasonably predictable result which would permit legal counsel to advise clients and trial and appellate courts to assure that equality of application of law to cases to which the public is entitled.
Ball v. Ball, 335 So.2d 5 (Fla. 1976), in effect holds that, in making a division of property in a dissolution proceeding, where all the consideration for property held as tenants by the entireties is supplied by one spouse from a source clearly unconnected with the marital relationship,[2] that spouse has a "special equity" in the property and is entitled to its return, "in the absence of contradictory evidence that a gift was intended." Wright[3] observes that Ball has troubled trial judges. The trouble is that Ball contains latent conceptual incongruities which promote vexatious litigation by subtle suggestions that (1) evidence of a gift is contradictory to evidence that the property was originally separate property; (2) a deed of conveyance of separate property to oneself and one's spouse does not constitute sufficient evidence of a gift to the spouse; and (3) evidence is admissible to vary, contradict, or add to, the unambiguous term of an unqualified deed of gift. Since separate property is the only type of property which can be the subject of a true gift as between married persons,[4] evidence that the property was previously separate property and that an interest in it was conveyed as a gift is entirely consistent. However, as a result of the language in Ball, parties often litigate these two concepts as if they were contradictory: the donor seeks to prove that the property was originally the donor's separate property (or that all the funds used to purchase it came from the donor's separate property) while the donee attempts to prove that the property was the subject of a gift. Some cases are resolved on this level of controversy. Sometimes the trial court (or later the appellate court)[5] either finds that the donor did not furnish all of the consideration from separate funds or finds the donor intended a gift and the donee prevails. Other times trial courts find that all the consideration was from the "donor" and that a gift was not intended and therefore hold for the donor. Commonly however, the trial judge and counsel instinctively realize that these questions are not really at issue so Ball is erroneously[6] read to suggest that the issue to be tried is the donor's subjective intent in making the gift with the donor contending that the conveyance was made solely to create a tenancy by the entireties for survivorship purposes during coverture[7] and the donee contending that the conveyance was an unqualified gift. Since every gift by one spouse to both creates a tenancy by the entireties, one of the incidents of which is that each has a right of survivorship, the trial judge often perceives the ultimate issue must be whether, at the time the gift conveyance was made, the donor intended it to be absolute in quality or conditioned on the continuance of the marriage. Since a standard unconditional deed is normally effective to make a gift of an interest in *436 land,[8] a proper application of the parol evidence rule would appear to preclude this inquiry; but the rule is disregarded because, in the usual case of a gift by formal deed, its application would make Ball meaningless  so testimony is taken. Since a married person making a beneficial gift to a mate is not normally then contemplating dissolution of marriage, the donor's strained[9] testimony impeaching the clear terms of his unqualified gift deed naturally raises a question as to the donor's credibility. A donee who would normally win at the first level of resolution merely by introducing the deed in evidence as proof of a gift loses at this level of dispute because of the inability to refute the donor's testimony as to a subjective intent to make only a qualified gift. The result is that cases involving the same simple question and the same essential facts are decided differently from case to case after extensive litigation with the result depending on the particular trial and appellate court's understanding of Ball, perceptions as to the credibility of the parties and the weight of the evidence, and various ancillary factors including whether the donor appears, in hindsight, to be able to financially afford to make the gift, the time between the gift and the dissolution, the length of the marriage[10] and the length of the chancellor's foot.
It should be recognized that while such gifts are made for various purposes and motives (usually to acquire, enhance, or restore wedded bliss),[11] they are, in form unqualified gift conveyances and are intended as such when made although they are sorely regretted later. A determinative rule of law, good for all time,[12] should be fashioned accordingly. The rule should be that unless it contains an express condition or qualification within itself, a deed or other conveyance absolute in form constitutes an executed gift and can be rescinded only for fraud or other grounds sufficient to set aside similar gifts as between unmarried parties. The mere regular and usual application of the parol evidence rule and the law relating to rescissions alone would attain this result.[13] On the other hand, if those who can implement philosophy by the creation of legal concepts, feel that public policy dictates that such gifts be subject to rescission on dissolution, as Ball implies, then the rule ought to forthrightly state that all such gifts are impliedly in contemplation *437 of, and conditional, upon, a continuation of the marital relationship.[14] Such a rule would not only be consistent with public policy considerations for the preservation of marriages but would promote and facilitate a resolution of the question in a more uniform and predictable manner. Another resolution would be to treat such gift cases similar to cases where one party supplies some but not all of the consideration for the jointly held property from proceeds of separate property and uphold the gift but, at least under certain specified circumstances, find a special equity in favor of the donor for the amount of the contribution from the separate property with the remainder, if any, equally divided. This would ameliorate the harshness of the "all or nothing at all" result of the Ball doctrine and while it would have no more or less basis in legal principle than Ball, it would do justice in more cases. This is, in effect, what is suggested as to Mr. West's $30,000 special equity in the majority opinion in West v. West, 399 So.2d 428 (Fla. 5th DCA 1981).
The cases since Ball are in complete disorder. In some cases the trial court followed Ball, found no gift and was affirmed on appeal.[15] Other times the trial judge followed Ball, found no gift but was reversed on appeal.[16] In other cases the trial court found a gift and was upheld on appeal,[17] while on other cases the trial court similarly found a gift but was reversed on appeal.[18] Because of the erratic and often harsh consequences of the application of Ball, many of the appellate decisions reversing trial courts have admittedly reached a far better result than did the trial courts. However, the trial judge may dislike his conclusion quite as much as the appellate panel which later criticizes and reverses him. Under law a trial judge, faithfully following a binding but faulty rule of law should not be reversed on the merits; the rule should be changed. A sound rule of law would eliminate obvious disparities resulting from the interposition of the philosophies of appellate panels for those of trial judges. A definitive guideline would also eliminate or reduce judge shopping and allow attorneys to more accurately advise clients and settle cases based on mutual agreement as to the predictable outcome of litigation. So until Ball is revisited by the supreme court and a better rule is promulgated for the guidance of trial courts, I cannot conscientiously reverse trial judges' decisions based upon findings of fact which are in turn based upon determinations of credibility and the *438 weight of evidence, by merely finding no evidence, or no "credible" evidence supporting the trial judge's conclusion, whether or not it makes for a result which appears to me more just. A formal deed of gift itself is always evidence of intent to make a gift. The unqualified terms of the usual deed from one spouse to both is always evidence of intent to make an outright, absolute, unconditional gift of a moiety to be held with a right of survivorship during marriage and, by statute,[19] as a tenant in common thereafter. The donor's testimony as to his donative intent, even if wrongfully admitted to vary, contradict, or add to, his writing,[20] is always a matter of credibility sufficient to sustain the trial court's finding or not finding that a gift was intended under Ball.[21] Accordingly, although I agree with the fairness of their result, I cannot concur with the action of the majority in reversing the trial judge in this case.
NOTES
[1] Separate property is property acquired from "a source clearly unconnected with the marital relationship." Ball v. Ball, 335 So.2d 5, 7 (Fla. 1976). This is the same concept used to describe certain property of a wife in Article 11, Section 1 of the Florida Constitution of 1885 (prior to the 1968 constitutional revision) and means property owned before marriage or acquired afterward by gift, devise, bequest, descent or purchased with funds from such sources.
[2] See note 1 supra.
[3] Wright v. Wright, 388 So.2d 1319 (Fla. 5th DCA 1980).
[4] As Judge Upchurch in Wright v. Wright explains, "To make a valid gift, a donor or grantor must have an unqualified right to the property he transfers ... Before a gift can be make the donor must first own the subject of the gift." 388 So.2d at 1321.
[5] See Sudholt v. Sudholt, 389 So.2d 301 (Fla. 5th DCA 1980).
[6] Ball only says that "the property should be awarded to that spouse [the donor], as if the tenancy were created solely for survivorship purposes during coverture... ." [emphasis added] 335 So.2d at 7.
[7] Coverture refers only to the condition, state, status or disability of a wife arising from the marriage relationship so the use of that word in Ball appears to have been improvident and it is taken to mean "during marriage."
[8] As in Ball, only land is here involved. The donee of a gift of personalty, the conveyance of which may or may not be accomplished by a formal written document, may have a different problem with proof.
[9] Typically the donor's counsel asks the donor, "When you made that deed did you intend to make an outright gift?" After a negative answer counsel then asks, "Well then, why did you make that deed?" "To create an estate by the entirety solely for survivorship purposes during coverture" or words of similar import (insofar as they can be remembered and pronounced) is the usual answer since Ball. The donor may view this as only an opportunity to express what his intent would have been if, at the time of the gift, he had been queried as to the result he desired for the gifted property in the event of a subsequent dissolution.
[10] Peculiarily the length of the marriage in Ball is not mentioned but a long marriage is conspicuously mentioned in most of the reported cases upholding a gift or reversing a contrary finding.
[11] Later the reasons given are anything except to make an outright gift. Normal reasons given are to avoid probate expenses, to provide security for the wife, for survivorship reasons, because someone told them to, etc.
[12] Cases such as Parramore v. Parramore, 368 So.2d 1308 (Fla. 1st DCA 1978), cert. denied, 376 So.2d 74 (Fla. 1979), Hart v. Hart, 377 So.2d 51 (Fla. 2d DCA 1979), and Wright v. Wright, 388 So.2d 1319 (Fla. 5th DCA 1980), avoided a harsh result under Ball by straining the retroactive language in Ball to make it inapplicable to the conveyance in that particular case. However if the rule in Ball does not lead to a good result in cases involving conveyances antedating it, then the rule will not obtain a better result in cases to which it applies because in this matter the public does not act in response to law cases. The appropriate rule of law should fit together human nature, common sense, and policy for the greatest public good so as to, if possible, use objective facts as proof to achieve a just result in the vast majority of the cases to which it applies.
[13] See e.g., Florida Moss Products Co. v. City of Leesburg, 93 Fla. 656, 112 So. 572 (1927). See also Englishmans Bay Co. v. Jackson, 340 A.2d 198 (Me. 1975).
[14] An analogy can be made to the rule involving gifts, such as engagement rings, made in contemplation of marriage. See Gill v. Shively, 320 So.2d 415 (Fla. 4th DCA 1975). The right to rescind the gift could either be absolute upon dissolution for any reason or, perhaps only if the dissolution is by, or with the consent of, the donee.
[15] See, e.g., Kaylor v. Kaylor, 390 So.2d 752 (Fla. 4th DCA 1980) [1980 F.L.W. 2034] (stock); Weiss v. Weiss, 390 So.2d 1236 (Fla. 4th DCA 1980); Pepper v. Pepper, 388 So.2d 1342 (Fla. 3d DCA 1980); Mitchell v. Mitchell, 368 So.2d 628 (Fla. 4th DCA 1979) (certificate of deposit); Merrill v. Merrill, 357 So.2d 792 (Fla. 1st DCA 1978) (real property and common stock treated identically); Malkemes v. Malkemes, 357 So.2d 223 (Fla. 2d DCA 1978).
[16] See, e.g., Leonard v. Leonard, 389 So.2d 256 (Fla. 3d DCA 1980) (houseboat); Holbrook v. Holbrook, 383 So.2d 981 (Fla. 4th DCA 1980); Hart v. Hart, 377 So.2d 51 (Fla. 2d DCA 1979); Laws v. Laws, 364 So.2d 798 (Fla. 4th DCA 1978); Sanders v. Sanders, 362 So.2d 284 (Fla. 1st DCA 1978).
[17] See, e.g., Wright v. Wright, 388 So.2d 1319 (Fla. 5th DCA 1980); Smith v. Smith, 382 So.2d 1242 (Fla. 2d DCA 1980); Marti v. Marti, 377 So.2d 1005 (Fla. 3d DCA 1979), dismissed, 383 So.2d 1198 (Fla. 1980) (savings account); Snider v. Snider, 371 So.2d 1056 (Fla. 3d DCA 1979), cert. denied, 383 So.2d 1202 (Fla. 1980) (notes and mortgages); Parramore v. Parramore, 368 So.2d 1308 (Fla. 1st DCA 1978), cert. denied, 376 So.2d 74 (Fla. 1979).
[18] See, e.g., Nusbaum v. Nusbaum, 386 So.2d 1294 (Fla. 4th DCA 1980) (certificate of deposit); Verace v. Verace, 383 So.2d 995 (Fla. 5th DCA 1980) (certificate of deposit); Behrman v. Behrman, 376 So.2d 294 (Fla. 2d DCA 1979) (certificate of deposit); Griffin v. Griffin, 375 So.2d 1086 (Fla. 1st DCA 1979); Evers v. Evers, 374 So.2d 1117 (Fla. 2d DCA 1979); Lawless v. Lawless, 362 So.2d 302 (Fla.2d DCA 1978); Bickerstaff v. Bickerstaff, 358 So.2d 590 (Fla. 1st DCA), cert. denied, 365 So.2d 709 (Fla. 1978).
[19] § 689.15, Fla. Stat. (1979).
[20] See § 90.103(3), Fla. Stat. (1979).
[21] In Parramore v. Parramore, 368 So.2d 1308 (Fla. 1st DCA 1978), cert. denied, 376 So.2d 74 (Fla. 1979), it is said, "Weighing of the evidence and determining the credibility of witnesses is uniquely within the province of the trier of the fact." Id. at 1310. See also Wise v. Wise, 335 So.2d 610 (Fla. 1st DCA 1976).