399 So.2d 428 (1981)
Lafe Camden WEST, Appellant,
v.
Florence Ellen WEST, Appellee.
No. 80-343.
District Court of Appeal of Florida, Fifth District.
June 3, 1981.
*429 C. Allen Watts, DeLand, for appellant.
Frank D. Newman, DeLand, for appellee.
SHARP, Judge.
The husband/appellant raises four points in his appeal from a final judgment of dissolution:
(1) The trial judge erred in failing to award him a special equity in the marital home;
(2) The court erred in awarding lump sum alimony in the form of a 1/2 interest in a note and mortgage to the wife;
(3) The court erred in awarding the wife permanent periodic alimony; and
(4) The court erred in awarding travel expenses and attorney's fees to the wife.
We agree that error occurred in this case on the first point, and we remand this case to the trial court for further consideration, in light of this opinion.
The parties were both previously married and widowed prior to their marriage in 1963. At the time of the dissolution, they had been married 15 1/2 years. Most of that time was spent in West Virginia. After their marriage, the wife came to live with the husband and his two daughters, ages 13 and 16, on his farm near Parkersville. The wife primarily performed housekeeping chores, and helped care for the girls until they married and moved away. The parties extensively remodeled the farmhouse after their marriage, and when they sold it in 1978, it was beautifully cared for and landscaped. *430 The husband worked as a foreman in a steelmill and obtained most of his income from that source, although he raised hay, cattle and some vegetables on the farm.
From her prior marriage the wife had a small farm. She sold it for $8,000 and at the time of the dissolution, she was allowed to retain approximately $4,000 from a joint savings account, which both parties agreed was the "balance" of these proceeds. She testified she spent the rest of her funds on gifts for the husband and his daughters, things they needed on the farm, and special expenses of the household.
From his prior marriage, the husband had his farm, titled solely in his name. Except for the remodeling loans, which he paid out of his earnings, the farm was unencumbered. When the parties moved to Florida in 1978, he sold the farm for $48,000. Out of these proceeds he spent $30,000 to buy the marital home and adjoining lot in DeLand, Florida. The house and lot were put in the joint names of the parties. The husband testified he intended to make no gift to the wife, and that his niece and her husband persuaded him to put the property in joint names for "tax" and survivorship reasons. He also testified that the note and mortgage for the balance owed on his farm (approximately $8,000) were erroneously put in the parties' joint names, contrary to his directions. He intended to put one of his daughter's names on the documents with his.
The record established that the parties had had a good marital relationship for many years, and the wife had been a good housekeeper, wife, and mother even though she had health problems. When they moved to Florida, the husband suffered a "change of personality." He became suspicious of his wife's fidelity without any basis, and he accused her of lying. Eventually he physically abused her, and drove her to West Virginia where he dropped her off at her sister's home, together with some of her clothing.
At the time of the dissolution, the wife was 71 years of age and in frail health. Her total assets consisted of her approximately $4,000 savings and personal articles. She received $174 per month in social security, her sole source of income. She does not drive, and were it not for her elderly sister's hospitality, she would have no place to live. She is unable to travel alone, and was required to borrow funds from relatives and persuade friends and relatives to bring her to Florida for the depositions and the final hearing in this cause.
At the time of the dissolution, the husband was 67 years old, and although he had suffered a stroke and was not able to work, he had a total income (pension and social security) of $627 per month. His financial affidavit showed a total of $45,710 in assets and $7,300 in liabilities.

POINT ONE
This record does not support the trial court's determination that the husband failed to establish a special equity in the parties' jointly owned home and lot in DeLand. This result must have been premised on the trial judge's finding that the wife either partially contributed to the purchase funds[1] or that the husband intended to make a gift to her when he put the property in joint names. The Florida Supreme Court "restated" the law on this point in Ball v. Ball, 335 So.2d 5, 7 (Fla. 1976);
Either spouse has the right to attempt to establish a `special equity' in the realty by reason of his or her extraordinary contribution towards its acquisition, either financially or through personal industry and service to the other party. The other party, of course, can negate the attempted showing or affirmatively attempt to show that a gift was intended ... Consistent with prior decisional law, however, we hold that a special equity is created by an unrebutted showing, as was developed here, that all of the consideration for property held as tenants by the entireties was supplied by one spouse from a source clearly unconnected with the marital relationship. *431 In these cases the property should be awarded to that spouse, as if the tenancy were created solely for survivorship purposes during coverture, in the absence of contradictory evidence that a gift was intended. (Footnotes omitted).
We recognize the breadth of discretion accorded trial courts in dissolution matters[2] but if there is no possible basis in the record to sustain the judgment, it must be reversed.[3] In this case there was no evidence the wife contributed any of her assets to the purchase of the marital home. Her hard work as a farm housewife and her husband's use of his earnings as a foreman to improve the farm are not the kinds of contributions which create "special equities."[4] The key issue in this case is whether in the face of the husband's uncontroverted testimony that he did not intend to make a gift to the wife, there was any "contradictory evidence that a gift was intended."[5] We have carefully read the record, and conclude there was no such evidence. Therefore, the trial court could only have concluded that the husband was entitled to receive at least his $30,000 special equity in the marital home and lot.[6]

POINT TWO
We find the trial court committed no error in awarding this wife lump sum alimony in the form of a one-half interest in the balance of the sums due on the note and mortgage relating to the sale of the husband's farm.[7] The length of this marriage, the relative financial situations of the parties, and the wife's expenditure of approximately $4,000 from her assets on the husband's farm and household are more than adequate grounds to sustain this award.

POINT THREE
The permanent alimony award of $100 per month to the wife was well within the trial court's reasonable exercise of discretion, based on this record.[8] Appellant argues that the wife's financial affidavit afforded no legal basis upon which to make a support award because it was based primarily on her estimated expenses, in the event she was able to move from her sister's home and establish separate living quarters for herself. The estimated expenses do not appear to be grossly overstated or unreasonable. The wife estimated her living expenses at $777 per month, including "rent" and "transportation". The husband's estimated expenses were $645.50 per month, although he had no rent or house payment expenses.
The failure of the wife to base her affidavit on actual expenditures is not fatal in this case, because the record clearly shows she had only $174 per month total net income to live on after the parties separated, and the husband paid her no support during this time. She could not expend what she did not have. Her care and support were being partly provided for by her relatives. The husband merits no credit or consideration for either circumstance.

POINT FOUR
The trial court's award of $416.47 travel expenses to the wife are challenged by the appellant because the wife had more "liquid" assets than the husband. The husband, *432 however, had a much larger net worth than the wife and a far greater income. No error in making this award was demonstrated. Canakaris v. Canakaris, 389 So.2d 1197 (Fla. 1980).
For the reasons stated in this opinion we reverse Point One of the lower court's judgment, and remand this proceeding to the lower court for entry of an appropriate judgment. The court may, in light of our opinion, revisit all aspects of the judgment, and shall be free to consider a greater or lesser award of periodic alimony and/or lump sum alimony as may be appropriate in this case.
REVERSED and REMANDED.
COBB, J., concurs.
COWART, J., dissents with opinion.
COWART, Judge, dissenting:
I dissent for the reasons given in the dissent in Marsh v. Marsh, 399 So.2d 433 (Fla. 5th DCA 1981). Here, clearly, Mr. West supplied all of the consideration for the jointly held marital property from the proceeds of his West Virginia farm, so Sudholt v. Sudholt, 389 So.2d 301 (Fla. 5th DCA 1980) does not apply and Ball does. Ball cannot be avoided, as in Wright v. Wright, 388 So.2d 1319 (Fla. 5th DCA 1980), on the basis that Ball is not retroactive because Ball was decided in 1976 and the marital home was purchased after Mr. and Mrs. West moved to Florida in 1978.
Under Ball for the donee it's "all or nothing at all." If, as the trial judge here found, there was a gift, upon dissolution the donee has a moiety as a tenant in common (§ 689.15, Fla. Stat. (1979)). However, if, as the majority finds, there was no gift, Ball says "the property should be awarded to that [donor] spouse... ."
NOTES
[1] Sudholt v. Sudholt, 389 So.2d 301 (Fla. 5th DCA 1980).
[2] Herzog v. Herzog, 346 So.2d 56 (Fla. 1977); Shaw v. Shaw, 334 So.2d 13 (Fla. 1976).
[3] Shaw v. Shaw, 334 So.2d 13 (Fla. 1976); Winikoff v. Winikoff, 339 So.2d 262 (Fla. 3d DCA 1976).
[4] Duncan v. Duncan, 379 So.2d 949 (Fla. 1980). See Snider v. Snider, 371 So.2d 1056 (Fla. 3d DCA 1979), cert. denied, 383 So.2d 1202 (Fla. 1980).
[5] Ball v. Ball, 335 So.2d 5 (Fla. 1976).
[6] Wright v. Wright, 388 So.2d 1319 (Fla. 5th DCA 1980); Sudholt v. Sudholt, 389 So.2d 301 (Fla. 5th DCA 1980).
[7] Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980); Bird v. Bird, 385 So.2d 1090 (Fla. 4th DCA 1980); Caidin v. Caidin, 367 So.2d 248 (Fla. 3d DCA 1979), cert. denied, 381 So.2d 765 (Fla. 1980).
[8] Canakaris v. Canakaris, 389 So.2d 1197 (Fla. 1980); Shaw v. Shaw, 334 So.2d 13 (Fla. 1976).