CORTIÑAS, J.
(dissenting).
Although much of the final judgment of dissolution of marriage was pursuant to stipulation of the parties and based on the prenuptial agreement, the primary dispute involved the determination of marital debts: the former husband claimed approximately $310,000 from the former wife, and the former wife claimed nearly $750,000 from the former husband. The only uncontested debt was for $239,323.04 evidenced by promissory notes from the former husband to the former wife; the former husband’s three financial affidavits acknowledged an “estimated” debt of $550,000. Shortly after he filed for divorce, the former husband wrote the former wife three checks for $10,000, $12,000, and $400,000, “in partial payment of a marital debt.” He testified that the $400,000 figure was an “arbitrary number”; the total amount of the marital debt remained under dispute until the final judgment was entered a year and a half later.[1] It was clearly not a Valentine’s Day gift to his soon-to-be ex-wife.
The trial court, after considering the various alleged debts, determined that the former wife owed the former husband approximately $98,000 from six claims, and the former husband owed the former wife *109 only the $239,323.04 debt evidenced by the promissory notes. Reasonably, the court ordered that the former husband’s $422,000 checks be credited toward his debt to the former wife and that the former wife repay the former husband $182,676.80, the amount by which the checks exceeded his debt.
On appeal, the former wife contends that the $422,000 was a “partial settlement” that the trial court should not have disturbed. Nowhere does the former wife indicate what was settled by the former husband’s payments, but clearly nothing was, as the parties continued to litigate all of the alleged debts for another year and a half; in fact, she admitted at trial that she did not know to which of his debts the payment should apply in the event she prevailed on them all. Furthermore, there is nothing in the record to support this argument, nor did the former wife ever make it at trial. She is therefore precluded from raising it for the first time here because it “must [have been] presented to the lower court and the specific legal argument or ground to be argued on appeal or review must [have been] part of that presentation if it is to be considered preserved [for appeal].” Tillman v. State, 471 So.2d 32, 35 (Fla.1985). The former wife argues that the former husband in his financial affidavits admitted a $550,000 marital debt, completely disregarding that the affidavits themselves identify the amount as “estimated.” See West v. West, 399 So.2d 428, 431 (Fla. 5th DCA 1981) (holding that estimated figures in a financial affidavit are permissible if not “grossly overstated or reasonable”). The former wife also argues that the $422,000 payments are evidence of the former husband’s indebtedness of at least that amount, ignoring Florida law prohibiting a partial payment in settlement of a debt from serving as evidence of the indebtedness. See § 90.408, Fla. Stat. (1976) (“Evidence of an offer to compromise a claim which was disputed as to validity or amount ... is inadmissible to prove liability or absence of liability for the claim or its value.”).
Finally, at oral argument, the former wife asserted that the former husband had not asked for rescission of any portion of the $422,000, and therefore, because “a judgment upon a matter entirely outside of the issues made by the pleadings cannot stand,” Dysart v. Hunt, 383 So.2d 259, 260 (Fla. 3d DCA 1980) (quoting Cortina v. Cortina, 98 So.2d 334, 337 (Fla.1957)), he cannot have his overpayment returned. This is patently absurd. The former husband, unlike the former wife in Dysart, did not file a claim for money damages. Indeed, it was the former wife who made a claim for the former husband’s money. However, the trial court determined that she was not entitled to this money. In lieu of allowing the superfluous funds to disappear into the ether, the trial court logically returned them to their true owner. Furthermore, this was an option the former husband had explored in his trial memorandum: professing to owe the former wife only the sums indicated by the promissory notes but acknowledging a preemptive overpayment, he reasoned that “the remainder of the funds owed should be either returned to the former husband by the former wife and/or applied towards any other items that the [c]ourt deems to be owed to the former wife.” The trial court correctly credited the former husband’s payments against his share of the marital debt and properly ordered that the former husband would be returned the amount he overpaid. The monetary calculations could not have been simpler.
Similarly, as occurred with regard to the former husband’s $400,000 partial payment, for the first time on appeal, the former wife also disputes the reasonableness of the guardian ad litem’s fees. *110 Shortly after the guardian was appointed, the trial judge issued an order stating that “[a]ny and all fees and costs incurred by the [guardian] shall be billed to [the former husband] ... without prejudice for an assessment and allocation of those fees and costs at final hearing.” A year later in the Agreed Joint Stipulation, it was the former husband, who had already paid $110,000, who “objected] to the fees and costs requested by the [guardian] as being unreasonable.” The trial court, on two separate occasions, invited the former wife to object to its consideration of the guardian’s fees, but she merely argued that she should not be required to pay and declined to raise any further claims or present any evidence. From the record, it is apparent that she had no objection to the reasonableness of the fees when she thought the former husband would be paying them. However, the trial court decided the former husband had already paid his fair share and ordered her to pay the remaining $37,000: the final judgment delineates that the court “took into account the evidence presented by the parties as it relates to a) the parties’ ability to pay and need for payment; b) the factors enumerated in Fla. Patient’s Comp. Fund v. Rowe, 472 So.2d 1145 (Fla.1985), and Standard Guar. Ins. Co. v. Quanstrom,, 555 So.2d 828 (Fla.1990) as to the reasonableness of the fees; c) the amounts already paid by the parties for [the guardian’s fees and other fees]; and d) the equities involved, including the payment by [the former husband] of legal fees of [the former wife] incurred in litigating the amount of fees to be awarded.”
The former wife’s claim on appeal that the trial court made no finding as to the reasonableness of the guardian’s fees was not raised below and, as such, cannot support a finding that the trial court abused its discretion in ruling that the former wife was responsible for the remaining fees. The parties stipulated that the trial court would be responsible for allocating the fees; the court did so based on the equities as it, with its year and a half of experience with this case, understood them.
Also inexplicably, the majority accredits the former wife’s disingenuous demand for prejudgment interest on the $239,323.04 in promissory notes whose sole purpose was to protect the former wife from judgment in an unrelated civil suit.[2] These notes were clearly negotiable instruments under section 673.1041, Florida Statutes (1992); however, the former wife claims that because they provide for an “undertaking or instruction ... to do [an] act in addition to the payment of money,” namely, repaying the amount to the couple’s son in the event of the death of either party, they are not. She apparently misses the part of the statute that states that the act must be “in addition to the payment of money”: paying money, no matter to whom or under what circumstances, is the contemplated result of a negotiable instrument. The majority likewise misses the entire statute, citing cases decided prior to its enactment. Furthermore, as the former wife was only benefited by the notes, she has not “suffered an actual, out-of-pocket loss” that is a prerequisite for an award of prejudgment interest. See Alvarado v. Rice, 614 So.2d 498, 499 (Fla.1993). The notes themselves, and the correct resolution of this issue, could not be simpler.
I would affirm the trial court’s well-reasoned order.

. As late as two weeks before trial, the former wife listed the former husband’s debts to her as "tba,” or "to be announced,” on her financial affidavit; she revealed the $750,000 figure only at trial.

. The former wife still has not paid the 2003 judgment against her.