382 So.2d 1242 (1980)
Thomas A. SMITH, Appellant,
v.
Sharon B. SMITH, Appellee.
Nos. 78-2141, 79-317.
District Court of Appeal of Florida, Second District.
March 26, 1980.
Philip W. Dann of Baird, Robinson & Dann, St. Petersburg, for appellant.
John M. Edman of Meros, Coit, Edman, Meros & Smith, P.A., St. Petersburg, for appellee.
CAMPBELL, Judge.
The appellant husband seeks review of certain portions of a final judgment of dissolution of marriage and a post-judgment award of attorney's fees and costs to the appellee wife. The trial court specifically retained jurisdiction in its final judgment of dissolution to make an award of attorney's fees and costs.
When the parties married in 1962, their liabilities exceeded their assets by $35,000. They separated in 1977 after three children were born of the marriage: two girls and a boy, aged thirteen, ten and nine at the time of the final judgment.
At the time of the final judgment, the wife was thirty-six years of age and had one and one-half years of college. She was an airline stewardess at the time of the marriage and continued working until the first child was born, approximately one and one-half years thereafter. Since that time she has not worked, functioning instead as a housewife and a mother. She previously obtained a real estate license but has never engaged in that business nor does she express any desire to engage in such business. The wife has experienced certain health problems which limit her activities to some extent.
*1243 The husband is an attorney with a limited practice. His principal activities are devoted to several closely-held and interrelated corporations in the food service industry. His gross income in 1977 was $61,500. Exhibits introduced at the final hearing show his net worth to be approximately $2,000,000.
This court's principal concern in this case is the first issue raised by the husband; that is, did the trial court err in concluding that the husband had failed to establish a special equity in three parcels of jointly owned property which the court determined by its final judgment should continue to be jointly owned by the parties. The three parcels involved are a vacant lot in Hawaii, a condominium in Pinellas County and four contiguous, unimproved residential lots located on Clear Avenue in Tampa.
Clearly consistent with the holdings of Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980), even had the trial judge determined that the husband had a special equity in these properties, he could have, upon a proper finding, still awarded all or a portion of his interest to the wife as additional lump sum alimony. The trial court did not follow that possible avenue of relief, however, but instead denied the husband's request for a finding of a special equity. The husband's sole attempt to establish a special equity was by an attempted showing that the properties were acquired with funds he received from an inheritance unconnected with the marriage.
Thus, we must determine, in light of Ball v. Ball, 335 So.2d 5 (Fla. 1976), whether the trial judge properly refused to find a special equity in the husband. In the case of all three properties, the initial acquisition of title was as tenants by the entirety.
There was evidence before the trial court that the husband did receive a $250,000 inheritance from a Martha Kreher probably sometime in 1974. The time of receipt is problematical because we have to use other, non-direct evidence to backtrack to a probable date that the husband received the inheritance. The will of Mrs. Kreher was not offered by either party. No evidence from the probate estate of Mrs. Kreher nor any financial records of the husband were offered to establish the date he actually received the inheritance. He was never specifically asked when he received the inheritance. The only indication in the record as to when it was received comes following a question asked of him by his counsel about the Pinellas County condominium, the first of the three parcels in dispute that we must consider.
The question asked of husband by his counsel, and concerning the condominium was, "It was bought in 1974?" The husband replied, "Yes. And we financed it through the Clearwater Federal Savings and Loan." The husband also stated at that time, "We bought it primarily for the children." When asked a short time later where the sums came from for the purchase of that property he replied only, "That was about the time that I got the money from the inheritance."
The exhibits filed in the proceeding below by the wife show that the condominium was purchased June 27, 1974, for $43,500. Both parties signed a note and mortgage with Clearwater Federal Savings and Loan Association for $34,800 of the purchase price, payable $389.48 per month until paid. In a March 29, 1974, financial statement of the husband filed for the purpose of securing a commitment for that loan, he lists under "other assets" a "vested inheritance" of $250,000.
The wife testified that the condominium was acquired in 1974. When asked how they happened to acquire the condominium she replied, "It was for our family. Our home was small, fairly small, and instead of building right away we decided that it would be a good recreational place for the children to having during the summer months and on the weekends."
Since the will of Mrs. Kreher was not part of the record before the trial court, there exists conflict as to the intent of her bequest because of the differing testimony of the parties. The husband testified that Mrs. Kreher was a friend and confidante of his and that he received the bequest, put it *1244 in a savings account in his name alone and used it for various things over a period of time. He further testified that none of it was intended for the wife. The wife testified that Mrs. Kreher was a friend of both parties and visited in their home and they in her home. Both parties testified that she took them both on trips to Switzerland and other places at her expense. The wife further testified that Mrs. Kreher informed both parties they would be receiving a copy of her will in the mail and that the money was supposed to be for both parties. Finally, she testified that the husband told her, "That Martha had left us $250,000."
The second of the three parcels in dispute is the vacant lot in Hawaii. The uncontradicted testimony of the wife concerning the date of acquisition of the property was that in her "guess" it was seven years prior to the time of the final hearing in 1978. The husband's testimony concerning the lot was that he had a friend selling real estate in Hawaii, that the friend owned two lots and, "It was $2,000 down and I took the balance on the loan." He at no point identified where the money came from that paid for that property.
The third of the three parcels of property in dispute consists of four residential lots on Clear Avenue in Tampa. The wife testified that these lots were purchased in 1976 for $55,000. They were in a residential subdivision of Tampa surrounded by existing homes and were purchased in the parties' joint names for the purpose of building a new and larger home for their family. The husband testified that he used $15,000 from the inheritance from Mrs. Kreher to make the down payment and financed the $40,000 balance of the purchase price at the Sun Bank.
In regard to all three parcels, the husband was asked the following question and gave the following answer:
Q: Did you say to your wife when you accepted the deed to that property and to the house and the property on Clear Avenue in Tampa and the condominium  did you say to her that that was not her property and that that was your property?
A: I didn't intend it to be a gift. It was not in those words, no.
In Ball v. Ball, supra, a case in which the respondent did not appear or file a brief, the supreme court quashed a decision of this court which had affirmed a trial court's ruling that a wife's transfer to herself and her husband as tenants by the entirety of real property acquired as a direct result of an inheritance from the wife's mother created a presumption that she intended a gift to her husband. We also affirmed the trial court's ruling that the gift presumption was not overcome by a mere showing that the wife supplied all the funds for the property. In quashing this court's decision, the supreme court held that, "a special equity is created by an unrebutted showing, as was developed here, that all of the consideration for property held as tenants by the entireties was supplied by one spouse from a source clearly unconnected with the marital relationship." 335 So.2d at 7 (emphasis added). The supreme court noted further, however, that, "Ordinarily a special equity will not arise where property held as tenants by the entireties is acquired with funds generated by one working spouse, while the other spouse performs normal household and child-rearing responsibilities." 335 So.2d at 7, n. 7.
Here, the condominium of the parties was originally acquired in 1974 as a tenancy by the entirety basically by means of a purchase money mortgage and primarily for the recreational use of the family. There was no evidence produced to trace any inherited funds into the down payment and for all the record shows the property was acquired before the husband actually received the inheritance.
As closely as can be established from the record, the Hawaii property was acquired as a tenancy by the entirety in 1971, some three years prior to the time the husband speculates he received the inheritance.
As far as the record discloses, the residential lots on Clear Avenue in Tampa were acquired in 1976 as a tenancy by the entirety for the purpose of constructing a new *1245 and larger home for the parties and their children. Even if the inheritance could be said to have come to the husband alone from a source clearly unconnected with the marital relationship, which is doubtful in view of the lack of evidence in the record, the use of $15,000 of those funds to apply toward the $55,000 purchase price is not of itself sufficient to establish a special equity in the husband. The evidence that title was taken as tenants by the entirety for the purpose of constructing a new home was also sufficient contradictory evidence for the court to conclude that a gift was intended of even that $15,000 down payment.
This case clearly does not come within the holding of Ball v. Ball, supra, that an unrebutted showing that all the consideration for property held as tenants by the entirety was supplied by one spouse from a source clearly unconnected with the marital relationship creates a special equity. The refusal of the trial court to find a special equity in the husband and thereby leaving the parties as joint owners of the three parcels of property is supported by the facts established in this case construed pursuant to the holdings of Ball v. Ball, supra.
The husband also contests the trial court's award of lump sum alimony and attorney's fees and costs to the wife. We conclude that the court came within the parameters of Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980), in making these awards.
The trial court awarded attorney's fees to the wife's attorneys after the notice of appeal from the final judgment of dissolution had been filed. However, it had specifically retained jurisdiction to do so in its final judgment. The amount of the award of attorney's fees was based on the only testimony presented to the trial court as to the reasonableness of such fees. During the oral argument on this cause, the husband called this court's attention to its recent decision of Judge v. Judge, 370 So.2d 833 (Fla. 2d DCA 1979), in which we held that an award of attorney's fees by the trial court entered after the filing of a notice of appeal from a final judgment of dissolution of marriage was void for lack of jurisdiction. In that case this court's attention was not directed to nor did we consider Florida Rule of Appellate Procedure 9.600(c), which provides that in dissolution of marriage cases the trial court shall retain jurisdiction after the filing of a notice of appeal for the purpose of, among other things, entering and enforcing orders pertaining to costs and attorney's fees. We, therefore, recede from Judge v. Judge, supra, insofar as Florida Rule of Appellate Procedure 9.600(c) provides that after the filing of the notice of appeal in dissolution of marriage cases the court shall retain jurisdiction of the proceedings for certain specifically enumerated acts.
We have considered the other points raised by the husband and find them to be without merit. Accordingly, we affirm the judgment of the trial court.
GRIMES, C.J., and SCHEB, J., concur.