384 So.2d 317 (1980)
Robert M. STITH, Appellant,
v.
Elizabeth N. STITH, Appellee.
No. 78-1906.
District Court of Appeal of Florida, Second District.
June 11, 1980.
*318 Ronald A. Cyril of Nelson, Hesse, Cyril, Weber, Smith & Widman, Sarasota, for appellant.
John M. Strickland of Livingston, Patterson & Strickland, P.A., Sarasota, for appellee.
DANAHY, Judge.
In this dissolution of marriage proceeding the trial judge awarded the wife the sum of $240,000.00 in lump sum alimony payable in installments of $1,000.00 per month for a period of twenty years. Further, he directed the husband to secure that award by naming the wife as the irrevocable beneficiary of the husband's revocable trust and maintaining all life insurance policies on his life payable to that trust as well as a separate $25,000.00 policy payable to the wife. The trial judge also reserved jurisdiction to review these provisions of the final judgment and to award periodic alimony if the circumstances require. We reverse with directions that the award be modified in accordance with this opinion.
The husband enjoys an after-tax income of approximately $50,000.00 per year and does not quarrel with the requirement that he pay the wife the sum of $1,000.00 per month under present circumstances; however, he contends that the monthly payment obligation should be simple periodic alimony rather than installments of a lump sum award. He points out that the award burdens him and his estate with a substantial obligation which is neither terminable upon the wife's remarriage or death nor subject to modification should the circumstances of either party change. He suggests, for example, that the wife might die or remarry with $200,000.00 of the lump sum award remaining to be paid, eliminating her need for support but requiring the husband to continue making monthly payments of $1,000.00 per month for almost seventeen more years or, in the event of his death, requiring his estate to pay so much of the obligation as would then remain.
The husband further hypothesizes a situation in which he becomes incapacitated or suffers some other severe change of circumstances *319 making it impossible for him to pay the monthly installments, but not enabling him to obtain relief from the continuing obligation. As the husband points out, a lump sum award gives rise to a vested right which is not subject to modification. Our supreme court recently affirmed that rule in Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980).
In the final judgment, the trial judge stated in detail the circumstances which persuaded him to make the lump sum alimony award in this case. Those circumstances certainly justify the wife's description of herself as a typical displaced homemaker. The parties were married for twenty-three years; the wife is now forty-six years old. Although she holds a college degree and a teacher's certificate, she has not worked since the birth of the parties' first child twenty-one years ago. Because of her age and lack of experience, her prospects for employment are not good. The wife points out that she spent the most economically productive years of her life as a mother and homemaker; that in doing so, she relinquished her opportunity for a career; that her prospects for future employment and remarriage are dim; that she has no estate and her prospects for creating one are minimal. The wife has assets worth approximately $50,000.00, including her one-half interest in the marital home.
The husband, on the other hand, finished law school after the marriage and advanced his professional career to a respectable level of success. He is currently employed as executive vice president in charge of the trust department of a bank. His income consists of his base salary plus fringe benefits and additional income from investments.
The husband is the grantor and sole beneficiary of a revocable trust to which a substantial amount of life insurance on his life is payable. The face amount of that insurance is $215,850.00, from which loans in the amount of $28,500.00 are deductible. The husband has other assets (some of which are in the trust) totaling approximately $387,000.00. He claims that he has liabilities of approximately $287,000.00, producing a net worth of approximately $100,000.00. The husband's liabilities include the sum of $120,000.00 owed to himself as trustee of a trust established by his father for the benefit of his sister.
The alimony award fashioned by the trial judge in this case was designed to meet a perceived need of the wife for protection in the event of the husband's death. As the trial judge expressed it, the death of the husband after the entry of the final judgment would be tantamount to financial disaster for the wife. Certainly we cannot quarrel with that conclusion, which undoubtedly applies to a vast number of divorced wives who have no sources of support other than their ex-husbands and who are unable to support themselves.[1] The question which confronts us is whether that risk may properly be addressed in the manner chosen by the trial judge in this case.
Where a lump sum alimony award is justified, such an award can provide an ex-wife with sufficient security to minimize her risk that her sole means of support will be lost to her if her ex-husband should die, and an award designed for that purpose is appropriate. Grobard v. Grobard, 382 So.2d 117 (Fla. 3d DCA 1980). A lump sum award payable in installments is perfectly proper in an appropriate case. West v. West, 260 So.2d 541 (Fla. 1st DCA 1972). Further, jurisdiction may be retained, as the trial judge did in the instant case, to award periodic alimony if found necessary after the termination of lump sum alimony *320 installment payments. Canakaris v. Canakaris, supra.
Unfortunately, the lump sum award to the wife in this case is not within the parameters set for lump sum alimony by the supreme court in Canakaris v. Canakaris, supra. In that case the court approved the award of lump sum alimony as a means of insuring an equitable distribution of property acquired during the marriage, as well as a means of providing support. The court emphasized that an award of alimony should be fashioned so as to achieve equity between the parties.[2]
Applying the principles of Canakaris and the standard of review mandated by the supreme court in that case, we are compelled to conclude that the trial judge in this case abused his discretion in the lump sum award made to the wife. While the wife views with suspicion the husband's liability in the amount of $120,000.00 owed to himself as trustee for his sister, there is nothing in the record to support the conclusion that this is not a bona fide debt. The fact remains that the husband has a net worth of $100,000.00, plus his $40,000.00 share of the equity in the marital home. A lump sum award of $240,000.00 to the wife on the facts in this case simply cannot be justified as an equitable distribution of property acquired during the marriage.
Nevertheless, we have explored the possibility of accommodating both the wife's need to be protected in the event of the husband's death and the husband's desire to be relieved of any further alimony obligation in the event the wife should die or remarry prior to the husband's death, or in the event of a substantial reduction in the husband's economic circumstances. We first considered whether this could be accomplished by an award of permanent periodic alimony which is made a charge against the husband's estate. We initially wrote this opinion to state that although two of our sister courts have approved an alimony award charged against the obligor's estate, Rouse v. Rouse, 313 So.2d 458 (Fla.3d DCA 1975), and Davis v. Davis, 358 So.2d 126 (Fla. 1st DCA 1978), we felt that there was a serious question whether a trial judge in Florida has the authority to make such an award based on circumstances such as those in the case before us. In the course of our writing, the supreme court rendered a decision dispelling any such question by making it clear that under the law of Florida, the obligation to pay alimony dies with the obligated party. O'Malley v. Pan American Bank of Orlando, N.A., 384 So.2d 1258 (Fla.Sup.Ct. May 8, 1980). Reaffirming its decision in Aldrich v. Aldrich, 163 So.2d 276 (Fla. 1964), the court referred to the law in this respect as clearly established and settled.
Under the rule that the duty of support ends with death and, therefore, alimony must terminate at the death of the party required to pay it, Florida courts have disapproved provisions in final judgments requiring a former husband to maintain insurance on his life for the benefit of his former wife in the event he should predecease her. The courts viewed such a requirement as tantamount to an award of alimony extending beyond the husband's death. Perkins v. Perkins, 310 So.2d 438 (Fla. 4th DCA 1975); Putman v. Putman, 154 So.2d 717 (Fla. 3d DCA 1963). That appears to be a traditional view. Annot., 59 A.L.R.3d 9 (1974). Our supreme court, however, has not expressly embraced that view.
In a continuing marriage, a husband who has not accumulated substantial assets may use life insurance to provide his wife with an adequate estate for her protection in the *321 event of his death. We think it unfortunate to forbid imposing such an arrangement on an ex-husband for the benefit of his ex-wife on the theory that life insurance under such circumstances can only be viewed as security for an alimony obligation and, therefore, is improper because the alimony obligation cannot extend beyond death.
Without elevating form over substance, we believe the solution to the problem lies in viewing life insurance as an asset which can be the subject of a lump sum award to the wife, just as any other asset. As we have noted, the husband in this case has accumulated net assets of $100,000.00. The life insurance policies payable to the husband's revocable trust and his separate $25,000.00 policy are also assets available to the husband and we see no impediment to awarding those assets to the wife as lump sum alimony. Such an award can be framed in terms which will protect the wife if the husband predeceases her while she remains unmarried, but at the same time terminate the husband's obligation to the wife in the event of her death or remarriage prior to his death. The husband's income justifies a requirement that the husband pay the premiums on those life insurance policies as a form of additional periodic alimony. Cf. Cyphers v. Cyphers, 373 So.2d 442 (Fla. 2d DCA 1979) (the requirement that a husband contribute a monthly amount toward a major medical insurance policy for the wife considered part of the wife's permanent periodic alimony).
Accordingly, we reverse the award of lump sum alimony in this case with directions that the wife be awarded permanent periodic alimony in the amount of $1,000.00 per month plus the ownership, as lump sum alimony, of the husband's $25,000.00 life insurance policy and those life insurance policies on the husband's life which are presently part of his revocable trust, subject to the following conditions:
1. The wife may not assign the policies to anyone and shall have no right to borrow against the policies or to surrender them for their cash surrender value.
2. Should the wife die or remarry prior to the husband's death, ownership of the policies shall revert to the husband or his designee.
3. The parties shall cause the wife to be irrevocably designated beneficiary of the policies contingent upon her also being the owner of the policies at the husband's death; that is, if at the husband's death, the wife is living and has not remarried. Otherwise, the proceeds are to be payable to a beneficiary selected by the husband or, if none, to his estate.
4. The husband shall pay all premiums due on the policies and all interest due on the existing loans against the policies until the death or remarriage of the wife, or until his death, whichever shall first occur.
5. The parties shall cause a copy of the conditions of the award to be sent to each of the life insurance companies which issued the policies and shall file in the trial court an acknowledgment of receipt from each company.
The trial judge will, of course, retain jurisdiction to modify the permanent periodic alimony awards should the circumstances of either party change substantially.
In all other respects, the final judgment is affirmed.
REVERSED IN PART, AFFIRMED IN PART, AND REMANDED WITH DIRECTIONS.
GRIMES, C.J., and HOBSON, J., concur.
NOTES
[1] Typically such women are too young to qualify for social security benefits and have no minor child qualifying them to receive AFDC benefits. Our opinion in Desilets v. Desilets, 377 So.2d 761 (Fla. 2d DCA 1979), describes such an ex-wife. The consequence of losing the alimony on which such women depend may be poverty subsistence. Forty-nine per cent of all widows and single women in the United States have incomes which are at or below the poverty level of income officially defined by the Bureau of the Census of the U.S. Department of Commerce. Bureau of Labor Statistics (U.S. Department of Labor), Facts on Women Workers (January 1980).
[2] In 1971 the Florida alimony statute was amended to provide that in determining a proper award of alimony, the court may consider any factor necessary to do justice and equity between the parties. Ch. 71-241, § 10, Laws of Fla. That provision has remained in the alimony statute, which was next amended as of October 1, 1978, to direct that all relevant economic factors be considered in determining an alimony award, including those specific factors listed in the statute, and to permit the trial judge to consider "any other factor necessary to do equity and justice between the parties." § 61.08, Fla. Stat. (1979). The 1978 amendment does not apply to the instant case and was not applied in Canakaris.