429 So.2d 1197 (1983)
Sumner LANDAY, Petitioner,
v.
Barbara J. LANDAY, Respondent.
No. 60948.
Supreme Court of Florida.
March 31, 1983.
Wayne O. Smith of the Law Offices of Wallace, Smith & Finck, St. Petersburg, for petitioner.
Robert L. McDonald, Jr., Tampa, for respondent.
EHRLICH, Justice.
This is a petition to review the decision of the Second District Court of Appeal reported at 400 So.2d 43 (Fla.2d DCA 1981). It alleges conflict with Sudholt v. Sudholt, 389 So.2d 301 (Fla. 5th DCA 1980) and Snider v. Snider, 371 So.2d 1056 (Fla. 3d DCA 1979), cert. denied, 383 So.2d 1202 (Fla. 1980). We have jurisdiction pursuant to article V, section 3(b)(3), Florida Constitution. We approve the result of the district court below in all respects except the formula used to measure a contributing spouse's special equity, in which case we partially adopt the position set forth in the concurring and dissenting opinion of Judge Danahy.
This case concerns the determination in dissolution proceedings of a "special equity" in the marital home. Barbara and Sumner Landay were married in May 1973. One year later they purchased a house for $15,700 taking title as tenants by the entireties. Barbara Landay paid the entire down payment ($6,486.57) from her separate funds, accumulated by her before the marriage. During the marriage, except for brief periods, both parties were employed. The mortgage was paid from income earned by both parties, rental income from a garage apartment, and a small amount of rental income from the house itself. Except for two short periods of time, the couple lived in this house during the union.
They separated in 1979. Dissolution occurred in January 1980. The only property subject to division was a coin collection, a mirror, household furniture and furnishings, and the marital home.
*1198 The transcript reveals that at trial Barbara Landay attempted to establish entitlement to a special equity in the home by her unrebutted claim that she paid the entire down payment from her separate funds. This payment constituted 41% of the purchase price. In spite of her claim, the trial court refused, on the authority of Ball v. Ball, 335 So.2d 5 (Fla. 1976), to find a special equity inuring to her benefit and only awarded her one-half interest emanating from record title.[1]
Upon review, the Second District Court of Appeal disagreed with the trial court's interpretation of Ball and reversed. That court addressed the central issue as follows:
Where one marriage partner contributes funds from a source unconnected with the marriage to payment of some but not all of the consideration for property acquired by the parties as a tenancy by the entireties, does a special equity arise in favor of the contributing spouse and, if so, to what extent?
400 So.2d at 44.
After reviewing the earlier opinions in its own district, that court retreated from its holding in Smith v. Smith, 382 So.2d 1242 (Fla. 2d DCA), dismissed, 392 So.2d 1379 (Fla. 1980), overruled, Landay v. Landay, 400 So.2d 43 (Fla. 2d DCA 1981). The Smith decision had interpreted Ball as holding that no special equity arises unless the contributing spouse provides all of the consideration from separate funds.
After finding that a special equity did exist in Barbara Landay's favor the district court reviewed the various methods being used by the courts to calculate the value of that interest. In attempting to do equity, it adopted a percentage ratio approach, finding Barbara Landay's interest to be "[a] percentage interest in the property equal to the ratio of the cash down payment she made to the entire purchase price of the property with the remainder of the property shared equally with the husband." 400 So.2d at 45. This formula calculation allowed Barbara Landay to benefit from the appreciation of the real property, ultimately evaluating her share as 70.5% of the market value.[2]
In a concurring and dissenting opinion, Judge Danahy noted but a single area of disagreement with the majority opinion. He opined that the correct formula to be used to measure a spouse's special equity begins with an equal division of marital property as per record title and then carves the special equity out of the other spouse's half share. He reasoned that while the percentage interest would be the same as that using the majority's formula, the legal underpinning would more closely comport with both the dictates of Ball and the special equity concept itself.
Sumner Landay sought review of the district court holding, urging that the Smith interpretation of Ball was correct and that the trial court order be reinstated. In the alternative, he argued that if we do find a special equity in Barbara Landay's favor, we should adopt the "vested interest" approach and limit the value of that interest to the actual amount of the contribution, i.e., $6,486.57. We find the same uncertainty that the Second District Court of Appeal observed within its district exists in other districts.
Since our pronouncement in Ball, at least one court has followed the Smith approach. Sudholt v. Sudholt; see also Snider v. Snider *1199 (where the court indicated it would follow an "all" approach, but found that a gift was made). Others have adopted a "vested interest" approach finding a special equity to the extent of the contribution only. Evers v. Evers, 374 So.2d 1117 (Fla. 1st DCA 1979); Sanders v. Sanders, 362 So.2d 284 (Fla. 1st DCA 1978). Still another court has awarded a percentage ownership based on the amount of the contribution only. Malkemes v. Malkemes, 357 So.2d 223 (Fla. 2d DCA 1978), overruled, Landay v. Landay, 400 So.2d 43 (Fla. 2d DCA 1981).
Ball dealt with a wife who had inherited one-half interest in a house. Using inherited funds she purchased the other one-half interest from her brother and remodeled the house substantially. She then transferred the property to herself and her husband as tenants by the entireties. When dissolution was granted, we held:
The premise that record title bespeaks an equal division is, of course, only the starting point for a property division. Either spouse has the right to attempt to establish a "special equity" in the realty by reason of his or her extraordinary contribution toward its acquisition, either financially or through personal industry and service to the other party. The other party, of course, can negate the attempted showing or affirmatively attempt to show that a gift was intended. We are not now called upon to determine the range of circumstances which might create a special equity. Consistent with prior decisional law, however, we hold that a special equity is created by an unrebutted showing, as was developed here, that all of the consideration for property held as tenants by the entireties was supplied by one spouse from a source clearly unconnected with the marital relationship. In these cases the property should be awarded to that spouse, as if the tenancy were created solely for survivorship purposes during coverture, in the absence of contradictory evidence that a gift was intended.
335 So.2d at 7 (footnotes omitted).
The thrust of our holding in Ball was twofold. First, the Court eliminated the judicially created presumption that when separate property is used to purchase marital property, the presumption arises that one spouse makes a gift of those separate funds to the other spouse. See, e.g., Steinhauer v. Steinhauer, 252 So.2d 825 (Fla. 4th DCA 1971), disapproved, Ball v. Ball, 335 So.2d 5 (Fla. 1976). Second, that opinion outlined a method for establishing a special equity on behalf of either spouse, by tracing the separate funds which were used to purchase jointly-held assets. That holding did not eliminate the possibility that a gift from one spouse to another could be made, nor was it to be interpreted to mean that in order to establish a special equity interest one spouse must contribute all and nothing less of the consideration used to purchase the jointly held property. While in Ball we did use the words "all of the consideration," that was the factual context of that case, and we did not intend to imply that its holding would not apply where less than "all of the consideration" was contributed by one spouse.
We are of the opinion that the percentage ratio approach adopted by the district court is the fairest one. It recognizes that the spouse who furnishes some but not all of the consideration for entireties property has, in effect, made a capital investment, which should give the contributing spouse an enhanced interest in the property. Having invested his or her capital in the property, the contributing spouse should be permitted to reap the fruits of such investment, if any.
However, we believe that the specific formula used by the majority below, while arriving at the same result as that in the concurring/dissenting opinion, is not the proper one to be adopted by this Court. Rather, we feel a portion of the formula proposed in the concurring/dissenting opinion to be more harmonious with the theoretical underpinning of Ball and the special equity concept. In Ball, we stated that "record title ... is ... the starting point for a property division." 335 So.2d at 7 *1200 (emphasis supplied). We also emphasized that "using record title as the touchstone ... requir[es] some evidentiary showing beyond that for an award other than an equal division." 335 So.2d at 8 (emphasis supplied). We thus start with the fact that in the absence of any claim for special equity on either spouse's part, record title bespeaks an equal division of property. A tenancy by the entireties automatically becomes a tenancy in common upon divorce. § 689.15, Fla. Stat. (1981). Ipso facto, each spouse already has a 50% interest in the property. What a spouse then seeks to do is to carve out from the other spouse's interest in the property his or her special equity, which is, in fact, a vested interest. "This means that where the property is held as a tenancy by the entireties, so that each spouse already has a 50% share, a special equity established by one spouse must be expressed as an interest in addition to that spouse's existing 50% interest." 400 So.2d at 46 (Danahy, J., concurring in part and dissenting in part). Therefore, the correct formula to be used in situations where a spouse furnishes some but not all of the consideration for entireties property, may be stated thusly: in addition to that spouse's automatic one-half share, the contributing spouse acquires a special equity in the property equal to one-half the ratio which that spouse's contribution bears to the entire consideration. This formula is workable and easily applied. Its simplicity and fairness, furthermore, lie in the fact that situations of both appreciation and depreciation are adequately covered.
The opinion of the district court, with the modifications noted above, is hereby approved.
It is so ordered.
ALDERMAN, C.J., and ADKINS, BOYD and OVERTON, JJ., concur.
McDONALD, J., concurs specially with an opinion.
McDONALD, Justice, specially concurring.
I agree that a special equity may be found in situations in which less than "all of the consideration" was contributed by one spouse in a property which is titled in the joint names of the parties. I also agree with the premise that upon a dissolution of marriage the starting point is that each party owns fifty percent of the property. From that point the trial judge considers whether or not one spouse has a valid claim against the share of the other. It is at this juncture that I disagree that there is a "correct formula."
In a dissolution proceeding it is the responsibility of the trial judge, using his equity power and exercising his enlightened conscience while employing his discretionary power, to equitably dispose of the assets remaining, the remants, of a tattered and shattered marriage. To properly perform that task he cannot be restrained by a "correct formula." While it is proper for the trial judge to consider such formulae as guidelines, or as a tool he may employ, he must not be bound by them. The intangibles in every marriage vary and make each marriage unique. There are some situations where a proper distribution allows for a dollar return for a spouse's special investment in joint property. Sometimes converting it into a percentage is proper; most often it is considered a donation to the other without getting any of it back.
It should be reiterated that, when considering the distribution of previously jointly held property, the starting point is that each spouse has equal right to and ownership of that property. In most instances that equal ownership survives the dissolution but the nature of the ownership is transferred to a tenancy in common. Ball v. Ball, 335 So.2d 5 (Fla. 1976). There are times when equity and good conscience should not leave ownership there. This is frequently more discernible in an advanced age marriage, particularly when that marriage survives a relatively short time. A marriage for convenience, companionship, or nursing care is quite different from one where two people hope and expect to build a life and family together. When the former marriage breaks up it is much easier for a judge to find that there has been, in *1201 effect, a failure of consideration when one had placed his or her separate assets into the joint ownership of the parties on the assumption that this new journey across the matrimonial seas will succeed rather than being tossed upon the rocks of discord and failure in a short period. In these circumstances the equity of returning the contributed shares to their separate owners is more readily apparent but does not always exist here either.
In this middle aged marriage and dissolution case there was no factual basis for the trial judge to disallow the wife's equitable claim against the husband's share. He could have given her a dollar lien against the husband's share or a percentage portion of his share. Since the trial judge failed to do either the district court was correct in setting a percentage claim, which is properly clarified in the majority opinion. But, I emphasize that the formula applied here is a tool which in some circumstances is proper, but certainly not in all cases.
NOTES
[1] The trial court said in part:

The Court is aware of the decision in the Ball matter, but it does require something more than a showing of mere cash contribution from a separate source. It also requires a showing that the title was taken in joint names almost, in essence, by accident, not strictly speaking. Further, that on showing that it was a joint marital entity to purchase the property and pay for it during the mutual efforts and results of the parties, including joint income generated from the use and occupancy and rental of such property, it is a marital function between the parties for the purposes of the marriage.
This record, as seen by the Court, does not stand up sufficiently to award her a special equity in the residential property; and accordingly, her prayer for special equity is denied.
[2] The 70.5% share was computed by adding the 41% attributable to the down payment, and 1/2 of the remaining 59%.