474 So.2d 262 (1985)
Marian N. GREGG, Appellant,
v.
C. Bill GREGG, Appellee.
No. 84-2107.
District Court of Appeal of Florida, Third District.
June 18, 1985.
As Clarified on Denial of Rehearing September 12, 1985.
*264 Edward C. Vining, Jr., Miami, for appellant.
Floyd, Pearson, Richman, Greer, Weil, Zack & Brumbaugh and Ray Pearson and Bertha Claire Lee, Miami, for appellee.
Before NESBITT, BASKIN and JORGENSON, JJ.
NESBITT, Judge.
The wife appeals a final judgment of dissolution of marriage and the order entered on the parties' petitions for rehearing. The husband cross-appeals these same orders as well as an order awarding attorney's fees and costs against him. We affirm in part and reverse in part.
During the marital relationship both parties inherited funds. The wife used $23,734 of money she had inherited to aid in the purchase of certain real property, hereinafter referred to as the farm property. In addition to the wife's contribution, marital assets were needed to acquire the farm property. The farm property, however, is titled in the husband's name alone.
The husband used $20,000 he had inherited to invest in the "Store for Travel," hereinafter referred to as the store. This money was used to start the store and gave the husband fifty-one per cent of the stock and control of the business. Apparently, the store has been operating at a loss since its inception. At some point, $16,000 was loaned to the store by the parties from marital assets and a note was taken back.
In June 1983, the wife filed a petition for dissolution of marriage. After hearing testimony and argument of counsel, the court entered a final judgment of dissolution in April 1984. The judgment, inter alia, awarded the wife $1,700 a month permanent periodic alimony; awarded the wife the husband's interest in the marital home as lump sum alimony; awarded the wife a special equity of $23,734 in the farm property as well as a fifty per cent interest therein after deducting the special equity; ordered the husband to name the wife as irrevocable beneficiary on $125,000 of insurance on his life to secure the payment of alimony to the wife; ordered the husband to pay the wife $37,500 as her share of monies on deposit when the petition for dissolution was filed; and awarded the husband his stock interest in the store. Both parties filed petitions for rehearing. The order on rehearing deleted the provision in the final judgment concerning the payment of $37,500, finding there were no funds on deposit to be divided, and further, gave the husband a special equity of $17,000 in the farm property. Subsequently, the court awarded attorney's fees and costs against the husband.
The wife first contends that the court erred in awarding the husband a special equity in the farm property. We have reviewed the record and found nothing which would support a special equity in favor of the husband. The husband has made no showing that any funds of his, unconnected with the marriage, were used in the acquisition of the farm property. Accordingly, the provision in the order on rehearing awarding the husband a $17,000 special equity in the farm property must be stricken.
Striking this provision leaves the farm property subject to the wife's special equity. Although the property is titled in the husband's name alone, this fact does not prevent the wife from asserting a special equity therein. In the process of sorting out separate property (to be returned to the owner as special equity) from marital property (which may be subject to an equitable distribution between the parties) the trial court must look to the substance, that is, the source of the funds used to acquire the asset, rather than the form in which legal title was taken and held. McClung v. McClung, 427 So.2d 350, 353 (Fla. 5th DCA 1983).[1]
*265 It is now clear in Florida that when the separate property, or funds constituting separate property, of one spouse is combined with marital property, or funds constituting marital property, and both are used to acquire other property, under circumstances where there is no gift from the owner of the separate property to the other spouse, the owner of the separate property is entitled to a special equity in the new property upon dissolution, representing a return of the separate property. McClung, 427 So.2d at 351-52. See Landay v. Landay, 429 So.2d 1197, 1199 (Fla. 1983), clarifying Ball v. Ball, 335 So.2d 5 (Fla. 1976). In the present case, it is undisputed that the wife combined $23,734 of her separate funds with marital assets to purchase the farm property. Accordingly, the wife is entitled to a special equity in said property. The question remains, however, as to the amount of the special equity.
Generally, there are two theories upon which to calculate a spouse's special equity. The first treats the special equity as a lien interest whereby the spouse obtains the return of the amount or value of the original contribution of separate property. The second treats the special equity as a capital contribution whereby the spouse obtains a percentage of the value of the acquired property equal to the ratio that the separate property contributed was to the original total acquisition cost. See McClung, 427 So.2d at 352. The trial court applied the lien theory in the present case. The supreme court has held that the second theory, or the "percentage-ratio" theory, is the correct one for determining a spouse's special equity in entireties property. Landay. The wife argues that Landay mandates the application of the percentage-ratio theory in the present case. We disagree.
Although we do find that the percentage-ratio theory is the correct one to apply in this case, the Landay decision does not mandate this result. The Landay decision is expressly limited to entireties property. In Landay, the supreme court explained the underpinnings of the formula it adopted as follows:
In Ball, we stated that "record title ... is . .. the starting point for a property division." 335 So.2d at 7 (emphasis supplied). We also emphasized that "using record title as the touchstone ... requir[es] some evidentiary showing beyond that for an award other than an equal division." 335 So.2d at 8 (emphasis supplied). We thus start with the fact that in the absence of any claim for special equity on either spouse's part, record title bespeaks an equal division of property. A tenancy by the entireties automatically becomes a tenancy in common upon divorce. § 689.15, Fla. Stat. (1981). Ipso facto, each spouse already has a 50% interest in the property. What a spouse then seeks to do is to carve out from the other spouse's interest in the property his or her special equity, which is, in fact, a vested interest.
429 So.2d at 1199-2000. Thus, the whole basis for the formula adopted in Landay was the fact that the property in which the special equity was claimed was entireties property. In the present case, however, the farm property, in which the wife is entitled to a special equity, is titled in the husband's name alone. Accordingly, the formula in Landay does not apply.
Although the exact formula adopted in Landay does not apply here, the considerations underlying the supreme court's adoption of the percentage-ratio approach over the lien theory are relevant. Following the supreme court's lead, we too find that the percentage-ratio approach is the fairest one. It recognizes that the spouse who furnishes some of the consideration for the property from his or her separate property or funds has, in effect, made a capital *266 investment. Having invested his or her capital in the property, the contributing spouse should be permitted to reap the fruits of such investment, if any.[2]See Landay, 429 So.2d at 1199.
In the present case, the record supports the trial court's finding that the wife furnished $23,734 from her separate funds to acquire the farm property and that said contribution was not intended as a gift to the husband. Accordingly, the wife is entitled to a special equity in the farm property equal to the ratio which her contribution of separate funds bears to the entire purchase price of the property. Because the trial court utilized the lien theory to calculate the wife's special equity, we must reverse for a redetermination of the special equity under the percentage-ratio approach adopted herein. On remand, the trial court should determine what percentage of the sale proceeds will constitute the wife's special equity.[3] The remaining equity in the property is, of course, marital property and, as such, is subject to equitable distribution in a manner the trial court deems fair and just under the circumstances of the case. See Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980); McClung, 427 So.2d at 352-53.
The wife next contends that the trial court erred in not awarding her some interest in the store. In the final judgment, the court awarded the husband "his stock interest in The Store for Travel." The record makes clear that the husband supplied all of the consideration for the stock he acquired in the store from a source unconnected with the marriage. Accordingly, the court correctly awarded all the stock to the husband. See Ball, 335 So.2d at 7.
The wife argues, however, that $16,000 from marital assets was loaned to the business and, therefore, she is entitled to some award. This loan was evidenced by a note taken back from the business. Although this note is not in evidence, we conclude from the husband's testimony that he included the note as an asset on his financial affidavit, that it is payable to him alone. The final judgment makes no disposition of this apparent marital asset. Accordingly, on remand, the trial court should make a specific ruling as to the note's disposition. We express no opinion on whether or not the wife should be granted any interest in the note. The trial court in its sound discretion must determine what would be just and equitable in view of the circumstances involved as well as the disposition of the other marital assets. See Canakaris.
The wife's final point on appeal is that the trial court erred after rehearing by ordering the deletion of a provision in the final judgment that directed the husband to pay the wife $37,500 as her share of monies on deposit at the time of the filing of the petition for dissolution on June 8, 1983. In its order on petitions for rehearing, the trial court deleted the provision upon a finding that "[t]here were no funds on deposit to be divided by the Court." The original award was apparently based upon the wife's claim, in her memorandum of law, for an interest in $75,000 worth of savings certificates and savings accounts. As the husband's counsel at rehearing correctly pointed out, "[t]here is not one word in this record of any such money."[4]
The wife relies completely upon an incomplete, unsigned, undated personal financial statement apparently partially *267 filled out by the husband in 1980 or 1981.[5] The statement indicates that the parties had cash on hand and in banks in the amount of $71,000. This application for credit was obviously never submitted to any institution since it is unsigned, does not indicate who is applying for the credit, and does not indicate to what institution it was directed. Even if the statement were accurate when completed, it in no way establishes that $75,000 was on deposit on June 8, 1983 when the petition for dissolution was filed. Although the statement was received into evidence, it was offered by the wife to establish the value of the stock in the Store for Travel. Nothing concerning the entry for cash on deposit was ever mentioned in the testimony of any witness.
Even if this entry on the statement should be considered competent substantive evidence on the point, it certainly does ot stand unrebutted. The husband's financial statement, accepted as sworn testimony by stipulation of the parties, clearly rebuts the existence of this alleged cash on deposit. Thus, whether or not such a fund existed remained a question of fact to be determined by the trial court. When the evidence is in conflict over the existence of a fact, the trial court's factual determination must be affirmed on appeal. Thus, since the existence of any monies on deposit was disputed, assuming the financial statement was competent substantive evidence on the point in the first place, the trial court's finding that there were no funds on deposit to be divided must be affirmed.
We move now to the husband's cross-appeal. The husband contends that the trial court erred in requiring him to maintain insurance on his life for the benefit of the wife. The final judgment of dissolution directs the husband "to name, as an irrevocable beneficiary on life insurance upon his life in the principal sum of $125,000.00, the Wife so as to secure the payment of alimony to Wife" and "to pay all insurance premiums thereon ... until such time as Wife's death or remarriage." We strike this provision as being tantamount to ordering payment of post-mortem alimony to which the husband did not consent or agree. See O'Malley v. Pan American Bank, 384 So.2d 1258 (Fla. 1980); Aldrich v. Aldrich, 163 So.2d 276 (Fla. 1964); Putman v. Putman, 154 So.2d 717 (Fla. 3d DCA 1963).
Alimony was originally established in Florida as a corollary to the common law obligation of a husband to supply the day-to-day necessities of his wife. At common law, this support obligation and, thus, any obligation to pay alimony, terminated upon the death of the husband. Aldrich. Therefore, absent an agreement to the contrary, provisions in divorce judgments requiring a husband to maintain life insurance for the benefit of the wife were deemed attempts to impose post-mortem alimony and were held invalid.[6]See Perkins v. Perkins, 310 So.2d 438 (Fla. 4th DCA 1975); Wilbur v. Wilbur, 299 So.2d 99 (Fla. 3d DCA 1974); Faidley v. Faidley, 298 So.2d 425 (Fla. 3d DCA 1974); Putman.
In the mid-to-late-1970's, however, the courts took a small step back from the per se rule of invalidity of life insurance provisions in dissolution judgments. These cases seemed to imply that the provisions would be permissible if the evidence in the record showed a justification or need for an award of alimony after death. See Beaman v. Beaman, 393 So.2d 19 (Fla. 3d DCA 1980); Weinschel v. Weinschel, 379 So.2d 145 (Fla. 3d DCA), cert. denied, 390 So.2d 827 *268 (Fla. 1980); Dutton v. Dutton, 379 So.2d 111 (Fla. 3d DCA 1979); Patrick v. Patrick, 358 So.2d 1184 (Fla. 1st DCA 1978); Watterson v. Watterson, 353 So.2d 1185 (Fla. 1st DCA 1977); Todd v. Todd, 311 So.2d 769 (Fla. 1st DCA), cert. denied, 321 So.2d 558 (Fla. 1975). Despite the implication arising from the holdings in these cases, all the insurance provisions were struck down as invalid in each and every one of the cases.
In 1980, the supreme court decided the O'Malley case and, therein, reasserted the Aldrich holding that a husband's support obligation terminates upon his death.
[T]he well established rule is that an obligation to pay alimony ceases upon the death of the obligor, unless that person expressly agrees that the estate shall be bound to pay alimony after his death. [citations omitted]
O'Malley, 384 So.2d at 1260. Following the O'Malley decision, it appears that if the husband does not agree to maintain insurance on his life for the benefit of the wife, any provision in a dissolution judgment requiring such is improper.[7]See Mahan v. Mahan, 415 So.2d 146 (Fla. 2d DCA), review denied, 424 So.2d 762 (Fla. 1982); Blais v. Blais, 410 So.2d 1365 (Fla. 5th DCA 1982); Eagan v. Eagan, 392 So.2d 988 (Fla. 5th DCA 1981). See also Adamson v. Adamson, 458 So.2d 1152 (Fla. 2d DCA 1984); Slaton v. Slaton, 428 So.2d 347 (Fla. 1st DCA 1983). But see Bean v. Thibault, 455 So.2d 508, 510 (Fla. 1st DCA 1984) (implying that if something in the record justified an award of alimony after death, a provision requiring the husband to maintain life insurance for benefit of his former wife might be proper). In Eagan, the court held:
Since alimony is a result of the common law obligation of a husband to provide necessities to his wife and the common law support obligation terminates upon the death of the husband, [Aldrich,] there is now a well established rule that an obligation to pay alimony ceases upon the death of the obligor in the absence of an express agreement. [O'Malley.] Since a trial judge cannot ordinarily award alimony to continue after death, provisions of dissolution judgments requiring the maintenance of life insurance for the benefit of a former spouse have been condemned as being tantamount to post-mortem alimony. [citations omitted] [footnotes omitted]
392 So.2d at 989. See also Blais. Accordingly, since the husband in the present case did not agree to maintain the insurance, we strike paragraph 9 from the final judgment of dissolution which requires the husband to maintain insurance on his life with the wife as irrevocable beneficiary until her death or remarriage. See Mahan.
Finally, we reject the husband's arguments that the trial court erred in awarding the wife the husband's interest in the marital home and a portion of her attorney's *269 fees.[8] These awards are supported by the record and the husband has failed to demonstrate that the trial court abused the broad discretion given to it in these areas. See Canakaris.
Accordingly, the judgment and orders under review are affirmed in part and reversed in part and the matter is remanded to the trial court.
NOTES
[1] It is not clear from reading McClung whether the property involved was entireties property or held by some other type of joint ownership by the parties. If the property was entireties property, the exact procedure for determining the special equity of a spouse adopted in McClung was slightly modified by the supreme court in Landay v. Landay, 429 So.2d 1197 (Fla. 1983). See text infra. In any event, the discussion and reasoning in McClung is applicable in the present case where entireties property is not involved in the dispute.
[2] In the event that the property should decrease in value, the amount of the special equity of the contributing spouse will be less under the percentage-ratio approach than under the lien theory. This necessarily follows from treating the furnishing of the separate property as a capital investment.
[3] Of course, the exact dollar amount of the special equity cannot be determined until the sale of the farm property.
[4] In fact, the same memorandum of law of the wife later requests an equal division of cash on deposit and refers back to the petition for dissolution which alleged the amount to be approximately $35,000.
[5] The husband testified that it was his handwriting on the document.
[6] Due to statutory authority granted in section 61.13(4)-(5), Florida Statutes (1983), a court may require a father to maintain insurance on his life for the benefit of his minor children as security for their support. Bosem v. Bosem, 279 So.2d 863 (Fla. 1973). See also Putman; Riley v. Riley, 131 So.2d 491 (Fla. 1st DCA 1961). No such statutory authority existed at the time the present judgment was entered, however, for such a requirement as security for alimony. But see ch. 84-110, § 1, Laws of Fla. (effective January 1, 1985) (creating statutory authority for a court to require a party to purchase or maintain life insurance to secure alimony).
[7] We recognize that the second district has adopted a theory which is claimed to by-pass O'Malley and allow awards requiring a husband to maintain life insurance for the benefit of the wife as a form of lump sum alimony. Stith v. Stith, 384 So.2d 317 (Fla. 2d DCA 1980). See also Noe v. Noe, 431 So.2d 657 (Fla. 2d DCA 1983). Cf. Cremeens v. Cremeens, 412 So.2d 864 (Fla. 2d DCA 1981) (on motion for rehearing) (applying the Stith theory to an award to the wife of payments remaining due on an installment contract upon the husband's death). Until recently it appeared that there may have been some conflict within the second district on this theory. See Adamson v. Adamson, 458 So.2d 1152, 1154 (Fla. 2d DCA 1984); Mahan v. Mahan, 415 So.2d 146 (Fla. 2d DCA), review denied, 424 So.2d 762 (Fla. 1982). In McClung v. McClung, 456 So.2d 637 (Fla. 2d DCA 1985), however, the court attempts to reconcile any apparent conflict by holding that if the intent of the trial court is to award post-mortem alimony, the award requiring a husband to maintain life insurance for the benefit of the wife is invalid, Mahan, but if the intent is to award lump sum alimony with premium payments to be permanent periodic alimony, the same award is valid, Noe; Stith. 456 So.2d at 638. We decline to decide whether the second district's "lump sum" theory is valid since in the present case it is obvious that the trial court intended that the insurance proceeds serve as a "res" to secure alimony payments in the event the husband should predecease the wife. Thus, it is clear the court was attempting to award post-mortem alimony.
[8] Initially, on August 28, 1984, the trial court entered an order awarding attorney's fees and costs in the amount of $18,331.60 against the husband. The court amended its order on September 6, 1984 and entered an order awarding attorney's fees of $10,000 and one-half the costs against the husband. Although the husband's notice of cross-appeal, filed September 24, 1984, refers only to the August 28 order, it was the September 6 order which was in effect when the notice was filed. Since a notice of cross-appeal is not jurisdictional and there is no claim by the wife of lack of notice or prejudice, this court will treat the husband's brief as sufficient notice to the wife that he cross-appeals the September 6 order on attorney's fees rather than the superseded August 28 order. See Ash v. Coconut Grove Bank, 448 So.2d 605, 606 n. 2 (Fla. 3rd DCA 1984); City of Hialeah v. Martinez, 402 So.2d 602, 603 n. 4 (Fla. 3d DCA), review dismissed, 411 So.2d 380 (Fla. 1981).